Jackson, Circuit Judge.
The complainant seeks by his bill to obtain a construction of the will of his brother, Robert P. Toms, deceased, and to set up and have declared in his favor a trust in and to such property as was devised to the wife of the testator, and remained undisposed of at her death. The defendant, as the heir at law of Mrs. Sarah Caroline *418 Toms, wife and devisee of said Robert P. Toms, in and by her answer denies that any trust was created by the will of the testator in complainant’s favor; claims that the testator in September, 1875, before the execution of his will, had by deed conveyed all or most of the property referred to and described in his will to his wife; and also questions the jurisdiction of this court to entertain the suit, and afford the relief sought, inasmuch as the settlement and administration of the estate of Robert. P. Toms and of said Sarah Caroline Toms are pending in the proper probate court of the state of Michigan, of which state said Robert P. and Sarah Caroline were residents and citizens at the times of their respective deaths. We think this objection to the jurisdiction of the court is not well taken. It is not the object or purpose of the bill either to amend or affirm the probate of the will of Robert P. Toms, or in any way to interfere with the proper jurisdiction of the probate court, and its proceedings, so as to bring the case within the rule laid down in Broderick's Will, 21 Wall. 503, and subsequent cases, holding that the United States circuit courts, as courts of equity, have no general jurisdiction for annulling or affirming the probate of a will. The complainant asserts rights under a will whose execution, validity, and probate are recognized, and, having the requisite diverse citizenship, he may seek relief in this court; there having been no construction of the will, and no adjudication of his rights thereunder, by any tribunal having jurisdiction of the subject and parties. This is settled by the case of Colton v. Colton, 127 U. S. 301, 308, 8 Sup. Ct. Rep. 1164.
The will of Robert P. Toms, which it is claimed charged his estate, or so much thereof as remained undisposed of at the death of his wife, with a trust in favor of complainant, provided as follows:
“In the name of God, amen. I, Robert P. Toms, of the city of Detroit, being of sound mind and disposing memory, do make, publish, and declare this to be my last will and testament, in manner following, to wit: First. I do will and direct that all my just debts, funeral expenses, and expenses of administering my estate be paid, as soon as practicable after my death, out of my personal estate. Second. I "have heretofore executed and delivered to my beloved wife, Sarah Caroline Toms, a conveyance of all the property of which I shall die seised or possessed; and to avoid all accidents or questions that may arise, and for the purpose of giving expression to my wishes as to her use and disposition of the property so conveyed to her, this will is made, and I do therefore devise and bequeath to my beloved wife all the real' and personal property, of every name and nature and wheresoever situated, of which I shall die seised or possessed. Third. It is my wish and desire that all my personal ornaments, jewery, and apparel, watch, gun, and fishing tackle, should be given by my beloved wife to my dear brothers, or to the survivor of them, as soon after my decease as practicable. Fourth. It is my wish and desire that my beloved wife shall give to William J. Gray, and Robert Toms Gray, sons ©f my dearest and best beloved friend, William Gray, Esq., my law library, safe, office furniture, and all things connected with my office as used by me, in the hopes of their becoming partners when admitted to the bar, so that no division shall become necessary of the library; and that she will attend to the education of Robert Toms Grayj furnishing him with a suitable sum for his clothing and expenses, and for his collegiate education, and until he shall be admitted to the bar. Fifth. It is my wish and desire *419 that my beloved wife, who has always been kind, affectionate, and devoted to me, should make free use of all the property so conveyed and devised to her for her own use or for charitable purposes, knowing that in case any of my immediate relatives, or her sister, Julia Frances Owen, who has always been a kind sister and devoted friend, should, by misfortune or otherwise, need or require any aid or assistance, that she would cheerfully and generously share with them; and therefore feel no hesitation in leaving with my wife the power to'carry out the wishes as expressed herein. Sixth. As I have no children to inherit my property, it is my wish that such property as my wife may have remaining undisposed of at her death, that she should previously will and devise the same to her sister, and to my surviving brothers and sisters, in equal proportions, leaving it entirely with her to make such use and disposition of her property by will as her kind heart and good judgment shall dictate, merely expressing my desires and wishes in the premises; and if change of fortune, or other causes, shall, in her judgment, make it unwise to carry out any or all of the foregoing wishes or requests, she is absolved from carrying out the same, as my wish to suitably provide for her care and comfort surpasses all other considerations; and, should she prefer to retain or dispose of the property so conveyed and devised to her in a manner different from wishes as herein expressed, she is at full liberty so to do, without having her right or motives for so doing called in question by my executors, or by any person or persons. Seventh. I do hereby nominate and appoint my friends, Geo. H. Lothrop, Esq., and William J. Gray, Esq., to be the executors, and my beloved wife, to be the executrix, of this, my last will and testament; and, having the fullest confidence in them, I direct that no bonds or other security be required of them for the faithful performance of their duties. In witness whereof I have hereunto set my hand and seal this fourteenth day September, 1877.”
The deed referred to in the second clause of the will bears date August 7, 1875, and for the recited consideration of $50,000, to the grantor paid by his wife, (Mrs. Toms,) grants, bargains, sells, releases, and forever quitclaims to her, her heirs and assigns, forever, “all the estate, real, personal, and mixed, of every name and nature, whatsoever and wheresoever situated, belonging” to the said Robert P. Toms, or in which he has any interest, “subject only to the right of said party of the first part to use, occupy, and enjoy the same for and during the term of his natural life.” It purports to have been signed, sealed, and delivered in the presence of his subscribing witnesses. The complainant charges in his bill that this conveyance was never in fact delivered to the grantee, and was therefore inoperative to vest her with the estate then owned by her husband. This is denied by the answer. Robert P. Toms died on March 10, 1884. Shortly after his death said deed was found in his office safe in an envelope, which contained valuable papers of his wife, as well as papers of his own; and on 28th of November, 1884, it was duly recorded in the proper register’s office of the county. Mrs. Toms died intestate in June, 1888, before the institution of the present suit, having in her possession and claiming as her own absolutely the property covered by said convejmnce, as well as that subsequently acquired by her husband and disposed of by his will.
Robert P. Toms was a lawyer of large practice and experience. In 1857 a banking firm of which he was a member failed for about $400,000, for the payment of which he was personally liable. In 1859 he made *420 a general assignment for the benefit of his creditors, and for about 10 years thereafter he was engaged in compromising, buying up, and getting releases of the banking firm’s debts for which he was liable. Those liabilities were settled and discharged some time about 1869. His wife had funds of her own derived from the estates of her father and mother, which, as appears from the evidence, were used by said Robert P. Toms in settling up the liabilities against him growing out of the failure of his banking firm. It is also shown that after being relieved of his embarassments he had the use of his wife’s funds. It does not appear that he ever accounted to her for the funds so used, and it may be fairly assumed that he was her debtor, or so considered himself, on August 7, 1875, when the conveyance aforesaid was executed, and that its purpose was to repay or refund to the wife what he regarded as equitably due her. This deed, after being duly executed, was deposited in the safe where the wife’s valuable papers were habitually kept, and was found in an envelope containing other valuable papers and securities belonging to her. There is no fact or circumstance disclosed by the evidence that fairly or necessarily negatives the presumption arising from the formal execution of the conveyance, and its being deposited with, and found among, other valuable papers of the grantee, that the deed was never delivered so as to become operative in the lifetime of the grantee. Again, his will, executed about two years later, expressly declares in the second clause thereof that he had previously, not only executed, but “delivered,” to his wife a conveyance of all his property; and in other clauses of the will refers to the property “so conveyed to her.” . Robert P. Toms being a lawyer of experience, it should be assumed that he k.new the force and meaning of the terms he used in reference to that conveyance. When he formally declared in his will that he had “executed and delivered” to his wife such a conveyance, the language should be given its natural force and legal meaning, and, in view of the other facts and circumstances above stated, should be held sufficient to establish the delivery of the deed. The second clause of the will, and the other facts of the case connected with the execution of the deed, and its being found with and among the valuable papers of the grantee, certainly do not tend to establish the allegations of the bill that said conveyance “was never delivered.” The delivery of a deed, to make it operative, is largely a question of intention on the part of the grantor. It is not essential to its validity that the instrument should pass into the exclusive manual custody or possession of the grantee. It may become operative even while the manual possession is retained by the grantor. It is not deemed necessary to review the authorities on this subject. They are perhaps so conflicting as not to be reconciled. Each case must depend largely, if not entirely, upon its special facts and circumstances. In the present case, the grantor, as husband, was the custodian of the grantee’s securities and valuable papers, which were kept in his office safe. After formally executing the deed, it is deposited, either by himself or his wife, (the proof does not establish which,) in the same place where her other valuables are kept, and two years thereafter the grantor by his will solemnly de *421 clares that he had not only executed, but had “delivered,” the conveyance. This formal declaration, in connection with the relationship of the parties, the way in which the wife’s valuable papers were kept, and the place in which the deed was deposited and found, establishes with sufficient certainty that said conveyance of August 7, 1875, was duly delivered, and operated to vest the wife of the grantor with the title of the estate, real and personal, of which he was then seised and possessed. The will subsequently executed could, of course, create no trust in complainant’s favor upon or in respect to the property thus conveyed to the-grantee.
It appears, however, that Robert P. Toms, after the date of said conveyance, and before his death, in 1884, acquired other property, real and personal, to the value of about $100,000, which was devised and bequeathed by his will to his wife; and the question which remains to be considered is whether the wife, under the provisions of the will, took this after-acquired property absolutely in her own right, or whether she took it charged with a trust in favor of complainant in respect to so much or such portions thereof as should remain undisposed of at her death. The general rules for the construction of wills are admirably set forth in Smith v. Bell, 6 Pet. 68, and in Colton v. Colton, 127 U. S. 801, 8 Sup. Ct. Rep. 1164. It is settled that the intention of the testator, as expressed in his will, is to prevail, when not inconsistent with rules of law; that in arriving at the testator’s intention the whole will is to be taken together, and is to be so construed as to give effect, if possible, to the whole; and that in expounding doubtful words, and ascertaining the meaning in which the testator used them, it may be proper to take into consideration the motives which may reasonably be supposed to operate with him, and to influence him in the disposition of his property, such as the ties connecting him with the legatees and devisees, and the affection subsisting between them. It is insisted on behalf of complainant that, applying these rules of construction to the will of Robert P. Toms, who had no child or children when his will was executed, and did not expect any, whose wife possessed property in her own right, and whose brothers and sisters were in moderate circumstances, and between whom and himself friendly family relations existed, there is from the whole instrument, taken together, clearly manifested an intention on the “part of the” testator to create a trust in favor of the testator’s surviving brothers and sisters, which complainant, to the extent of his interest, may enforce in equity against the defendant, who, as heir at law, has succeeded to the property which Mrs. Sarah Caroline Toms took under the will, and left undisposed of at her death, in 1888.
It is not, and cannot be, questioned that words of recommendation, entreaty, wish, or request, addressed by a testator to a devisee or legatee, will ordinarily make him a trustee for the person or persons in whose favor such expressions are used, unless the actual intention appear different. But it is settled by the authorities that, in order to the creation of such a trust enforceable in equity, three conditions must concur: (1) There must be such certainty of the subject-matter as to be ca *422 pable of execution by the court; (2) there must be certainty as to the beneficiaries or objects of the intended trust; and (8) the expressed wish, request, or desire of the testator must be imperative in its character, and not be left so dependent upon the discretion of the general devisee as to be incapable of execution without superseding or controlling that discretion.
In Story, Eq. Jur. § 1070, the general result of the authorities is thus summarized:
“Wherever, therefore, the objects of the supposed recommendatory trusts are not certain or definite; wherever the property to which it is to attach is not certain or definite; wherever a clear discretion and choice to act, or not to act, is given; wherever the prior dispositions of the property import absolute and uncontrollable ownership,—in all such cases courts of equity will not create a trust from words of this character. In the nature of things, there is a wide distinction between a power and a trust. In the former, a party may or may not act in his discretion; in the latter, the trust will be executed, notwithstanding his omission to act.”
To the same effect see 2 Pom. Eq. Jur. §§ 1014-1017, and notes.
In Briggs v. Penny, 3 Macn. & G. 546-554, the lord chancellor said upon this subject:
“I conceive the rule of construction to be that words accompanying a gift or bequest, expressive of confidence or belief or desire or hope that a particular application will be made of such bequest, will be deemed to import a trust upon these conditions: First, that they are so used as to exclude all option or discretion in the party who is to act, as to her acting according to them or not; secondly, the subject must be certain; and thirdly, the objects expressed must not be too vague or indefinite to be enforced.”
In Williams v. Williams, 1 Sim. (N. S.) 358-369, it is said:
“The point really to be decided in all these cases is whether, looking at the whole context of the will, the testator has meant to impose an obligation on his legatee (or devisee) to carry his express wishes into effect, or whether, having expressed his wishes, he has meant to leave it to the legatee to act on them or not, at his discretion.”
It is further said that it is doubtful—
“If there can exist any formula for bringing to a direct test the question whether words of request or hope or recommendation are or are not to be construed as obligatory.”
In the earlier and well-considered case of Knight v. Knight, 3 Beav. 148, it was said by the master of the rolls (Lord Langdale) that—
“If the giver (or testator) accompanies his expression of wish or request by other words, from which it is to be collected that he did not intend the wish to be imperative, or if it appears from the context that the first taker was to have a discretionary power to withdraw any part of the subject from the wish or request, it has been held that no trust was created.”
In Warner v. Bates, 98 Mass. 274-277, Chief Justice Bigelow, speaking for the court, said that the difficulties which are inherent in the subject-matter—
“Can always be readily overcome by bearing in mind and rigidly applying in all such cases the test that, to create a trust, it must clearly appear that the testator intended to govern and control the conduct of the party to whom the *423 language of the will is addressed, and did not design it as an expression or indication of that which the testator thought would be a reasonable exercise of a discretion which he intended to repose in the legatee or devisee. If the objects of the supposed trust are certain and definite; if the property to which it is to attach is clearly pointed out; and, above all, if the recommendatory or precatory clause is so expx-essed as to warrant the inference that it was designed to be peremptory on the devisee,—the just and reasonable interpretation is that a trust is created which is obligatory and can be enforced in equity against the trustee by those in whose behalf the beneficial use of the gift was intended.”
In the later case of Hess v. Singlar, 114 Mass. 56-59, after recognizing the general rule for the interpretation of wills that the intention of the testator, as gathered from the whole will should control the courts, it is said that—
“In order to create a trust, it must appear that the words were intended by the testator to be imperative; arid, when the property is given absolutely and without restriction, a trust is not to be lightly imposed, upon mere words of recommendation and confidence.”
The foregoing authorities, and the rules therein laid down, were cited with approval by the supreme court of the United States in the cases of Howard v. Carusi, 109 U. S. 725-733, 3 Sup. Ct. Rep. 575, and Colton v. Colton, 127 U. S. 313—315, 8 Sup. Ct. Rep. 1164. In the latter case Mr. Justice Matthews, speaking for the court, says:
“The question of its [a trust] existence, after all, depends upon the intention of the testator as expressed by the words he has used, according to their natural meaning, modified only by the context and the situation and circumstances of the testator when he'used them. On the one hand, the words may be merely those of suggestion, counsel, or advice, intended only to influence, and not to take away, the discretion of the legatee growing out of his right to use and dispose of the property given as his own. On the other hand, the language employed may be imperative in fact, though not in form, carrying the intention of the testator in terms eqxxivalent to a command, and leaving the legatee no discretion to defeat his wishes, though there may be no discretion to accomplish them by a choice of methods, or even to define and limit the extent of the interest conferred upon his beneficiary. ”
In the present case the subject-matter and the objects .may be regarded as sufficiently definite and certain to meet two of the conditions requisite to the creation of an enforceable trust. The controverted question is whether the wish expressed by the testator that such property as his wife might have remaining undisposed of at her death should be by her previously willed and devised to her sister, and his surviving brother and sister, in equal proportions, etc., imposed an imperative duty or obligation upon her to make such disposition thereof, or created an enforceable trust in favor of the surviving brothers and sisters in respect to the property which Mrs. Toms took by the will, and which remained undisposed of at her death. The testator’s will was executed September 14, 1877. Whether he had acquired any property between the 7th August, 1875, when he conveyed all his property to his wife, and September 14, 1877, when the will was executed, does not appear. He died seised and possessed of property, real and personal, other than that *424 conveyed to his wife by the deed of August 7,1875, and which was disposed of by his will. But whether such additional property was acquired before or after the date of the will’s execution does not appear. It is perfectly manifest that the wishes expressed by the testator as to the wife’s disposition of “her property” applied and had reference as well to that which had been conveyed to her by the deed of August 7, 1875, as to what might pass by the will. If in September, 1877, he had acquired no other property, the natural and obvious meaning of the words employed by the testator in the will, read in the light of his situation and circumstances when he used them, imports and expresses nothing more than a suggestion or wish, intended only to influence, and not to control, his wife’s-disposition of property already belonging to her. But assume that the testator was seised and possessed of property of his own when the will was executed, and expected to acquire additional 'property, which would pass by the will at and as of the date of his death, his expressed wish, as to how his wife should dispose of such property as she might have remaining undisposed of at her death, was not limited and confined to the property, she took by and under the will. His wish related as much to the property she had acquired by the deed as to that she took under the will. As to the former, his wish was not, and could not be, imperative, but only and merely an expression of his desire, intended to influence, by way of suggestion or advice, his wife’s disposition of her own property, and as to which she had full discretion and unlimited authority. As to the property which passed by the will, is the wish, in reference to that, expressed in the same language and same connection as that relating to the wife’s own estate, to be construed as imperative or as creating a trust? When a testator expresses precisely the same wish in relation to his devisee’s or legatee’s own property as he employs in reference to that devised or bequeathed by himself, can his language be properly construed as indicating an intention to create a trust as to the latter, when no such trust was intended or could be created by the testator in respect to the former? Under such circumstances, can it- be properly said that the expressed wish of the testator is any more imperative in the one case than in the other? He certainly has the right and power of disposition in the one case, which he does not possess in the other. But when he expresses the same wish in respect -to property previously conveyed by deed to the devisee which he expresses in reference to that which the devisee takes by the will, it is straining the rules of construction and interpretation to hold that the testator intended to create a trust as to the property devised, when the same language was not intended to and could not impress any such trust upon the devisee’s property to which such wish equally related and applied.
By the second clause of the will, after reciting the execution and delivery to his wife of a conveyance of all the property of which he should die seised and possessed, the testator proceeds to say:
“And to avoid all accidents or questions that may arise, and for the purpose of giving expression to my wishes as to the use and disposition of the *425 property so conveyed to her, this will is made, and I do therefore devise and bequeath to my beloved wife all the real and personal property, of every name and nature, and wheresoever situated, of which I shall die seised or possessed.”
It thus appears that the testator’s intention in executing the will was twofold: First, to avoid all accidents or questions that might arise in .reference to the previously executed and delivered conveyance to his wife; and, secondly, to give expression to his wishes as to the use and disposition of the property so conveyed to her. But if we leave out of view the conveyance made to Mrs. Toms in August, 1875, which, being considered in connection with the language of the will, leads strongly to the conclusion, if it does not establish the fact, that no trust was intended to be created by the testator, and consider the question solely on the provisions of the will itself, can the proposition be successfully maintained that a trust was created in favor of the testator’s surviving brothers and sisters as to the property devised, and remaining undisposed of, by the devisee, Mrs. Toms, at her death? The fact that she carried out the wishes expressed by the testator in the third and fourth clauses of the will throws little or no light on the subject, and in no way goes to establish the existence of the trust as claimed and sought to be enforced by complainant. She was advised that under the will of her husband she took the property devised to her absolutely, and was under no legal or equitable obligation to carry out the testator’s wishes in respect to the same. The fact that she did voluntarily comply with his wishes expressed in the third and fourth clauses of the will, relating to a portion of his personal effects of comparatively little value, has no material bearing on the question under consideration.
The fifth and sixth clauses of the will are mainly relied on to establish the trust sought to be enforced. These clauses must, of course, be read and considered in the light of, and in connection with, the second clause, which discloses the testator’s reasons for making the will to have been to avoid all accidents or questions that might arise about the antecedent conveyance to his wife, and to give expression to his wishes as to the use and disposition of the property so conveyed to his wife. Such being the avowed purpose and object in making the will, the fifth clause expresses the testator’s wish and desire that his beloved wife “should make free use of all the property” so conveyed “and devised to her for her own use or for charitable purposes, knowing that in case any of my immediate relatives, or her sister, Julia Frances Owen, * * * should, by misfortune or otherwise, need any aid or assistance, that she would cheerfully and generously share with them, and therefore.feel no hesitation in leaving with my wife the power to carry out the wishes as expressed herein.” There is clearly nothing imperative in the wish and desire thus expressed. The subject of the wish or property to which it is to attach is not certain or definite, but is left to the wife’s generosity. The testator knowing that, if the designated objects should by misfortune or otherwise need any aid or assistance, his wife would cheerfully and generously share with them, she is left with' the power both to judge when aid or assistance might be needed, and the quantum or amount *426 thereof, to be given according to her own generosity. Her “power” to carry out the wish expressed was left to her own sense of generosity, which necessarily implied the discretion to act or not to act in the event the objects named needed assistance, by reason of misfortune or otherwise. No trust arises from a wish thus expressed.
It is urged, with more confidence and plausibility, that a trust is created in favor of the testator’s surviving brothers and sisters by the sixth clause, which says:
“As I have no children to inherit my property, it is my wish that such property as my wife may have remaining undisposed of at her. death, that she should previously will and devise the same to her sister, and to my surviving brothers and sisters, in equal proportions, leaving it entirely with her to make such use and disposition of her property by will as her kind heart and judgment shall dictate, merely expressing my desire and wishes in the premises; and if change of fortune or other causes shall, in her judgment, make it unwise to carry out any or all of the foregoing wishes or requests, she is absolved from carrying out the same, as my wish to suitably provide for her care and comfort surpasses all other considerations; and should she prefer to retain or dispose of the property so conveyed and devised to her in a manner different from my wishes as herein expressed, she is at full liberty so to do, without having her right or motives for so doing called in question by my executors, or by any person or persons.”
It will be noticed that the first sentence of this clause expresses the wish, not that the designated objects should take, under the testator’s will, such property as he had devised to his wife and remained undisposed of at her death, but that she should previously (to her death) will and devise such property .as she might have remaining undisposed of at her death. His wish is that the designated objects should succeed to the property of the wife remaining undisposed of, by and through her will rather than-his own. But, while expressing this wish, the testator in the next sentence proceeds to say that he leaves “ it entirely with her to make such use and disposition of her property by will as her kind heart and judgment shall dictate, merely expressing my desire and wishes in the premises.” If the subject-matter or property to which the-wish related passed to the wife by the will, does not this sentence immediately following, and qualifying or explaining the testator’s wish, confer a clear discretion and choice upon his wife to act or not to act ? Is not the expressed wish accompanied or followed by language which clearly implies that he did not intend the wish to be imperative ? Can it be said that, in view of such an explanation of his wish, the testator meant or intended to impose an obligation on his wife to make a will in favor of the designated objects, or that' she should hold or dispose of the property for their benefit? Having expressed his wishes, the context shows that the testator meant to leave it to his wife to act on them or not, at her discretion; being willing, as he declared, after merely expressing his wishes in .the premises, that it should be left entirely with her to make such use and disposition of her property by will as her kind heart and judgment might dictate. No trust can arise under such language. But the subsequent sentences and expressions of *427 this sixth clause leave the subject free from any reasonable doubt. The testator further says, in explanation and qualification of his wish first expressed:
“And if change of fortune or other causes shall, in her judgment, make it unwise to carry out any or all of the foregoing wishes or requests, she is absolved from carrying out the same, as my wish to suitably provide for her care and comfort surpasses all other considerations.”
How can the wish of the testator which his wife is expressly “absolved” from performing, if from any cause it is “unwise” “in her judgment” to carry out the same, be deemed, under the authorities above cited, to exclude all option or discretion on her part as to her acting according to such wish or not? The testator does not, however, allow his intention to rest upon the foregoing declarations, but proceeds to say:
“And should she prefer to retain or dispose of the property so conveyed and devised to her in a manner different from my wishes as herein expressed, she is at full liberty so to do, without having her right or motives for so doing called in question by my executors, or by any person or persons.”
This language, conferring, as it does, upon his wife “ full liberty ” to either “retainor dispose” of the property so conveyed and devised to her in a manner different from the expressed wishes of the testator, without having her right or motives for so doing called in question by any one, is utterly inconsistent with the idea that he intended his wishes or requests to be imperative. On.the contrary, it clearly appears that the wife was to have a discretionary power and authority to withdraw all or any part of the subject from the wish, that the testator did not intend to govern and control her conduct in respect to the property conveyed and devised to her, and that his wishes were merely designed as an expression or indication of that which he thought or considered would be a- reasonable exercise of an unrestrained discretion and judgment on the part of his wife, and which he intended to repose in her. Under such circumstances, the authorities, almost without exception, hold that no trust is created; and the conclusion of the court is that the will of Robert P. Toms created no trust in favor of the complainant as one of his surviving brothers.
This conclusion being reached, it is not deemed necessary to consider whether Mrs. Toms’ verbal request to the defendant to pay or donate $10,000 each to the testator’s surviving brothers and sisters, and the representatives or children of a deceased sister, and which the defendant duly complied with and performed after the death of Mrs. Toms, was not an execution, in whole or in part, of any obligation resting upon Mrs. Toms or her estate, even if a trust had been created by the will of her husband. Nor is it necessary to discuss the question whether, if Mrs. Toms was vested with the devised property absolutely or with full and unlimited power of disposition over the same for her own use, a trust could be limited thereon. The cases of Jones v. Jones, 25 Mich. 401, followed and recognized in later Michigan decisions, and of Howard v. Carusi, 109 U. S. 725-732, 3 Sup. Ct. Rep. 575, seem to hold that a valid trust could not be created under such conditions. But we do *428 not deem it necessary to pass upon this point, as we hold that the will of Mr. Toms created no enforceable trust in favor of the complainant, whose bill is therefore dismissed, with costs to be taxed. A decree will be entered accordingly.