## McNitt v. Turner.

1. Under the statute of Illinois authorizing the sale of the real estate of a decedent, and directing the executor or administrator to make out a petition to the county court "stating therein what real estate the said testator or intestate may have died *seized of*," a statement of the real estate which he died "*leaving*" is a sufficient compliance with the statute.

2. Where a statute of Illinois enacted that "in all cases where an intestate shall have been a non-resident or without a widow, &c., but having property in the State, administration should be granted to the public administrator of the proper county, and to no one else:" *Held*, that where a person to whom letters of administration on the estate of a non-resident applied, under the statute referred to in the paragraph above, to have a sale of his property, and the court, having jurisdiction of the subject, ordered the sale, it would not be presumed that he was not the *public* administrator.

3. Where, under the same statute (the one referred to in the first of the above two paragraphs), an administrator gave public notice that he meant to apply to have a power to sell the decedent's lands, stating that it belonged to him, and describing the several pieces in this way:

| Parts of Sections. | Township. | Range. |
| --- | --- | --- |
| S. E. 4 | 1 S. | 4 W. |
| S. W. 24 | 3 N. | 8 W. |

"All the above lands being *recorded* north *or* south of the base line, and east and west of the fourth principal meridian."

And the petition prayed to sell the decedent's land, describing it as—

| S. E. 4 | 1 S. | 4 W. |
| --- | --- | --- |
| S. W. 24 | 3 N. | 8 W. |

---

* Gibson v. Chouteau, 8 Wallace, 314; Worthy v. The Commissioners, 9 Id. 613; Northern Railroad v. The People, 12 Id. 384.

*Held*, that the notice was correct, and the description in the petition, aided by the notice, sufficient.

4. A purchaser at judicial sale by an administrator, does not depend upon a return by the administrator making the sale, of what he has done. If the preliminary proceedings are correct, and he has the order of sale and the deed, this is sufficient for him.

5. Where jurisdiction has attached, whatever errors may occur subsequently in its exercise, the proceeding being *coram judice*, cannot be impeached collaterally except for fraud.

6. A purchaser at a judicial sale is a "purchaser" within the recording acts of Illinois, enacting that unrecorded deeds shall take effect as to "subsequent purchasers" without notice, after the time for filing the same for record, and not before.

Error to the Circuit Court for the Southern District of Illinois; the case being thus:

Turner, alleging that he " was possessed as of his own demesne in fee" of the same, brought *ejectment* against McNitt and another for a piece of land, "situate in the county of Brown, and State of Illinois," and described as follows, to wit:

" The southeast quarter of section four (4) in township one (1) south, of range four (4) west in said county of Brown."

Both plaintiff and defendant admitted title in one Samuel Spotts.

The plaintiff claimed through a decree of sale made on prior proceedings, by the Circuit Court of Adams County, Illinois, after Spotts's death. The validity of this title depended on the interpretation to be given to certain statutes, and on the validity of a certain notice, thus:

A statute of Illinois, relating to wills, enacts:*

" Section 51. In all cases where the intestate shall have been *a non-resident or* without a widow, next of kin, or creditors in this State, but having property within the State, administration shall be granted to the *public administrator* of the proper county, *and to no other person.*"

Another enactment provides:

" Section 98. When any executor or administrator, whose

------

* Gales's Statutes of Illinois, 698.

testator or intestate shall have died seized of any real estate in this State, shall discover or suspect that the personal estate of such testator or intestate is insufficient to pay the just claims against his or her estate, such executor or administrator shall, as soon as conveniently may be, make a just and true account of the said personal estate and debts, as far as he or she can discover the same, and shall make out a petition to the Circuit Court of the county in which administration shall have been granted, *stating therein what real estate the said testator or intestate died seized of*, or so much thereof as will be necessary to pay his or her debts as aforesaid, and to request the aid of the said court in the premises."*

Section 104 provides that the court shall examine the allegations and proofs, and if it appear that the personal estate is insufficient to pay the debts, the court shall direct the sale.

Section 105 provides that the conveyance made under the order of sale shall be effectual against all claiming through the intestate or his heirs.

Section 106 provides how the sales shall be made, imposes a penalty for selling contrary thereto, and declares that no irregularity in the sale shall affect the validity of the title.

With these provisions in force, Archibald Williams, to whom the probate justice for Adams County had granted, November 24th, 1837, letters of administration on the estate of Spotts, describing him as "of the city of New Orleans, Louisiana," gave in the Quincy Whig, for four weeks (the first publication being July 21st, 1838), the following

### Notice.

"The subscriber, as *administrator* of the estate of Samuel Spotts, deceased, will make application to the Circuit Court of Adams County, and State of Illinois, at the next September Term thereof, for leave to sell the following real estate, belonging to the said Samuel Spotts, or so much thereof as will be sufficient to pay his debts; his personal estate being insufficient to pay the same. All persons interested in said estate are re-

---

* Gales's Statutes of Illinois, 71.; Revised Statutes of Illinois of 1845, pp. 558, 559, §§ 103, 104, 105, 106.

quested to show cause, if any they have, why it should not be sold for the purposes aforesaid.

| Parts of Sections. | Township. | Range. |
|---|---|---|
| S. E.   4 | 1 S. | 4 W. |
| S. W. 24 | 3 N. | 8 W. |
| S. W. 15 | 10 N. | 3 E. |
| S. E.  26 | 13 S. | 2 W. |
| N. W. 36 | 4 N. | 6 W. |
| N. W. 23 | 5 N. | 7 W. |
| S. W.   7 | 9 N. | 5 E.* |

" All of the above land being *recorded* north *or* south of the base line, and east and west of the fourth principal meridian.

"Archibald Williams,
"Administrator of Samuel Spotts, deceased."

The notice having been thus given, Williams presented a petition or "bill" to the Circuit Court of the said county of Adams, setting forth these letters, and setting forth that Spotts had died intestate before the 1st of January, A.D. 1836, "*leaving*" in Illinois certain real estate described in the copy of the inventory, marked Exhibit A, filed herewith.

[The inventory (purporting to be "an inventory of the real estate belonging to the *estate of Samuel Spotts, deceased,*") then set forth thirty-one quarter sections of land, described in this style:

| S. E.   4 | 1 S. | 4 W. |
|---|---|---|
| S. W. 24 | 3 N. | 8 W. |
| S. W. 15 | 10 N. | 3 E. |
| S. E.  26 | 13 S. | 2 W. |
| N. W. 36 | 4 N. | 6 W. |
| N. W. 23 | 5 N. | 7 W. |
| S. W.   7 | 9 N. | 5 E.] |

The petition or "bill" further set forth personal property to the value of $5, and debts to the amount of $19,599, as appeared by an account thereof, annexed, and it prayed an order of sale of so much of the real property as would pay the debts.

---

* There were in all thirty-one quarter sections mentioned. The seven here given, show the style of the notice herein

The bill was exhibited against no one by name; no persons were made parties to it. Proof being made to the court of the publication as above mentioned of the "Notice," the court, reciting " that it appeared to it that the allegations in the said bill were true, and that due publication had been made of the intention to apply to this court for permission to sell *the lands in the said bill mentioned*," decreed, September 14th—its September Term—1838, a sale of them, or of so much as would pay the debts. The administrator made no report of sales until the 30th of August, 1851. He then reported that he had, on the 17th day of June, 1839, in pursuance of the decree, sold thirty-one quarter sections of land, one of which was the " S. E. 4, 1 S. 4 W.," which was reported as sold to one Hennen.

Through this sale and a chain of mesne conveyances, beginning with the heirs-at-law of Hennen, it was that the plaintiff claimed.

It was proved that the premises were situated in what is known as " The Military Bounty Tract."

THE DEFENDANT claimed through a deed (to one John Lucas), made in Spotts's lifetime, that is to say, through a deed dated September 12th, 1820, which deed, however, had not been recorded until January 2d, 1864. Whether the deed was operative depended on the interpretation to be given to a statute in force, alike when the deed was made, when it was recorded, and now,* and which enacts:

"SECTION 22. Deeds and other instruments relating to or affecting title to real estate, shall be recorded in the county where such real estate is situated."

"SECTION 23. All deeds, mortgages, or other instruments of writing, which are required to be recorded, shall take effect and be in force after the time of filing the same for record, *and not before*, as to all creditors and *subsequent* purchasers, without notice, and all such deeds and title-papers shall be adjudged *void* as to all such creditors *and subsequent purchasers without notice*, until the same shall be filed for record."

---

* Revised Statutes of Illinois of 1845, 108.

The court charged that the plaintiff, Turner, had shown title and was entitled to recover. The defendant excepted; the exception being in this general form:

" To which opinion and decision of the court the defendant then and there excepted at the time of the charge."

The defendants then asked the court to charge,

" (1.) That the deed from Spotts to Lucas and the subsequent deeds in that chain of title conveyed the fee of the premises in question to McNitt.

" (2.) That the deed from Spotts to Lucas having conveyed the premises to Lucas, Spotts did not die seized of them, and that they were therefore not liable to be sold by his administrator for the payment of his debts, and that the decree of sale was void.

" (3.) That Spotts having conveyed to Lucas before the proceeding in the Circuit Court of Adams County was instituted by Williams, no title passed by the deed of Williams to Hennen, and hence none by the subsequent mesne conveyances to Turner."

The court refused thus to charge, and the defendants again excepted.

Verdict and judgment having gone for the plaintiff, the defendants brought the case here.

*Messrs. J. Grimshaw and O. H. Browning, for the plaintiff in error:*

The proceeding in the court of Adams County was wholly *ex parte.* It does not show who Spotts's heirs were, or where they lived, or what their ages were. Though not stating that he left none, it wholly ignores the existence of any. No report of the sale was made until twelve years after it was made, if it was ever made. Where the sale was made is not stated. All this by way of preface to the argument.

1. The whole proceeding of converting realty into assets is a statutory and extraordinary one, and very dangerous to the rights of minors always. The 98th section of the statute relied on allows the sale by an administrator for debts only where the intestate has died *seized.* Seizin is a condition

precedent: and of course it must be averred in the petition that the party did die seized. Now—

1st. "Leaving" an estate is not equivalent to being "seized" of it. There are many rights in land inferior to "seizin." Indeed, a party may be *dis*seized and yet own an estate, which he may recover by writ. Such an estate he would "leave" though not seized of it; nay, though *dis*seized of it. There is the greatest reason then, for following the words of the statute.

2d. But if "dying seized of land" were synonymous with "leaving" it, how then?

As a matter of fact, Spotts did not die leaving this land. He had conveyed to Lucas years before he died. The fact of his conveyance is not denied. It is no answer to say that purchasers at judicial sale are "purchasers" within the meaning of the 23d section of the act relating to the recording of deeds. Purchasers at properly conducted judicial sales are; but not purchasers at judicial sales that are void. Purchasers under the 98th section, authorizing administrators to make sale, are purchasers within the recording acts *only* when the conditions which the statute prescribes for such sale have existed. Seizin (or, if you please, for the sake of the argument, "leaving") is here one condition. But certainly when the sale was applied for, and even when it was ordered and in process of being made, the condition did not exist. Spotts had neither died "seized" of nor "leaving" the land. How does the condition come into existence, by the fall of the auctioneer's hammer and the execution of the deed? It cannot so come into existence. The attempted answer begs the whole question.

2. The intestate was a non-resident, a citizen of Louisiana. It does not appear that he had ever been in Illinois. Now, the 51st section of the statute relating to wills is imperative, that in such a case the probate judge must do one thing, and one thing only. He must grant administration to the public administrator. Williams was not the public administrator; though, as a matter of fact, it may be stated that there was one at that time. Williams's letters were for

the administration of this estate alone.  They were plainly void under the statute.*

3. The only description given of the land in the petition, the exhibit filed therewith, the notice, the decree of sale, the report of sale in any of the papers connected with the case, is as follows: " S. E. 4, 1 S. 4 W.," to which it is fair to add the words, " in the State of Illinois," as the petition states that Spotts " died intestate, leaving in this State the real property described in the copy of the inventory marked Exhibit A."  It was decreed against by the same description; advertised for sale by the same description; and by the same description sold and reported by the administrator.

Now, by what right does the purchaser of the " S. E. 4, 1 S. 4 W.," in the State of Illinois, claim the " southeast quarter of section four, in township one south, range four west, in Brown County, Illinois ?"

No base-line, meridian, or county is mentioned in the description of the land in the proceedings in the Adams Circuit Court, though it is said that they are " *recorded* north *or* south of the base-line," &c.  But the court will take judicial notice that there are, in Illinois, different base-lines and meridians, and that there is a quarter section of land in Brown County and another in Washington County which equally answers to the description given in the petition, and other proceedings, viz.: " S. E. 4, 1 S. 4 W., in the State of Illinois."  Which was intended, the court cannot tell.  There is an ambiguity; but, as it was not raised by evidence, it cannot be removed by evidence.  It is inherent in the description, is patent, and the decree and the sale are alike void.†

*Messrs. Skinner, Marsh, and Frost, contra.*

Mr Justice SWAYNE delivered the opinion of the court.

This is a writ of error to the Circuit Court of the United States for the Southern District of Illinois.

---

* Case of the Marshalsea, 10 Reports, 76; Wales *v.* Willard, 2 Massachusetts, 120.

† White *v.* Herman, 51 Illinois, 244.

The defendant in error brought two separate actions of ejectment in the court below, one against each of the plaintiffs in error. They were landlord and tenant, and by consent of the parties the actions were consolidated. The plaintiff recovered the premises in controversy. The defendants thereupon brought this writ of error.

The chain of title relied upon by the respective parties was as follows: Turner gave in evidence a patent from the United States to Louis F. Lefay, dated October 23d, 1818; a deed from Lefay to Samuel Spotts, dated December 19th, 1818, and recorded in the proper county March 22d, 1820; the proceedings of the Circuit Court of Adams County, in Illinois, touching a decree of sale made by that court upon the application of Archibald Williams as the administrator of Spotts, and a sale made accordingly; a deed by the administrator to Duncan N. Hennen, the purchaser, dated June 17th, 1839, recorded April 3d, 1841; and a chain of mesne conveyances extending from the heirs-at-law of Hennen down to Turner, the plaintiff in the court below.

The defendants gave in evidence a deed from Spotts to John Lucas, dated September 12th, 1820, recorded January 2d, 1864, and a sequence of deeds from Lucas down to Mc-Nitt, one of the plaintiffs in error. McNitt was in possession of the premises.

The court instructed the jury that Turner had shown title, and was entitled to recover. To this the defendants excepted.

The defendants then asked the court to instruct the jury:

That the deed from Spotts to Lucas and the subsequent deeds in that chain of title conveyed the fee of the premises to McNitt.

That the deed from Spotts to Lucas having conveyed the premises to Lucas, Spotts did not die seized of them, that they were therefore not liable to be sold by his administrator for the payment of his debts, and that the decree of sale was void.

That Spotts having conveyed to Lucas before the proceeding in the Circuit Court of Adams County was instituted by

Williams, no title passed by the deed of Williams to Hennen, and hence none by the subsequent mesne conveyances to Turner.

These instructions the court refused to give, and the defendants excepted.

A few remarks will be sufficient to dispose of this exception. All the instructions relate to the deed of Spotts to Lucas.

The decree of sale was made by the court at the September term, 1838. The sale to Hennen was made on the 17th of June, 1839. The deed of Williams to him was made on the 17th of June, 1839, and recorded April 3d, 1841. The deed of Spotts to Lucas, though made on the 12th of September, 1820, was not recorded until January 2d, 1864. The 22d section of statute of Illinois, in force at both these periods and still in force, provides that " deeds and other instruments relating to or affecting title to real estate shall be recorded in the county where such real estate is situated." The next section is as follows: " Sec. 23. All deeds, mortgages, or other instruments of writing, which are required to be recorded, shall take effect and be in force after the time of filing the same for record, *and not before* as to all creditors and *subsequent* purchasers, without notice, and all such deeds and title-papers shall be adjudged *void* as to all such creditors *and subsequent purchasers without notice* until the same shall be filed for record."

The term " purchasers " as used in this statute includes purchasers at judicial sales. A deed not filed for record is as to them wholly without effect. It is in all respects, so far as they are concerned, as if it did not exist. The maxim applies, *De non apparentibus et de non existentibus eadem est ratio.**

Seizin was originally the completion of the feudal investiture. In American jurisprudence it means, generally, own-

---

* Martin *v.* Dryden, 1 Gilman, 187 ; Curtis *v.* Root, 28 Illinois, 367 ; Cook *v.* Hall, 1 Gilman, 575 ; see also Choteau *v.* Jones, 11 Illinois, 300 ; Kennedy *v.* Northrup, 15 Id. 148 ; Brookfield *v.* Goodrich, 32 Id. 363.

ership. The covenant of seizin and the covenant of right to convey are synonymous.*

The deed from Spotts to Lucas cannot affect any question arising in the case, and must be excluded from consideration. All the instructions asked by the plaintiffs in error assumed its efficacy for the purposes to which they referred. The instructions were therefore properly refused.

It is assumed in the assignment of errors and in the printed arguments of the learned counsel for the plaintiffs in error, that the admission in evidence of the record from the Circuit Court of Adams County, was objected to, the objection overruled, and exception taken. No such exception appears in the record.

In an action of ejectment the plaintiff must recover, if at all, upon the strength of his own title. The weakness of his adversary's cannot avail him.

The only exception which remains to be considered is to the charge of the court, that the plaintiff had shown title in fee and was entitled to recover. That exception is thus set out in the record: "To which opinion and decision of the court the defendant then and there excepted, at the time of the said charge." The chain of the plaintiff's title, as exhibited on the trial, consisted of many links. The exception should have pointed out specifically the link or links deemed defective, and in what the defect was supposed to consist, in order that the court might be duly notified and have an opportunity to correct the error, if any, into which it had fallen. The exception is insufficient. But this objection has not been insisted upon by the counsel for the defendant in error. We shall, therefore, consider the case as if the exception were sufficiently full and specific to meet the requirements of the rule upon the subject.

The objections taken to the title of the defendant in error are all confined to the judicial proceedings touching the sale by the administrator. Those objections, so far as it is necessary to consider them, are—

---

* Rawle on Covenants for Title, 34; Browning v. Wright, 2 Bosanquet & Puller, 14; 1 Washburn on Real Property, 35.

That the seizin of Spotts, at the time of his decease, is neither averred nor shown; and that the contrary appears.

That the authority to sell was given to Williams, the administrator, specially appointed, when the general administrator for the county should have been appointed, and the authority given to him; and that the description of the premises in the petition of the administrator is insufficient and a nullity.

It is insisted that these defects are jurisdictional, and that the proceeding was *coram non judice* and void.

The petition sets forth " that the said Samuel Spotts heretofore, to wit, before the first day of January, A.D. 1836, died, *leaving* in this State the real property described in the copy of the inventory marked ' Exhibit A,' filed herewith." The term *leaving*, used in this connection, is the synonym of *owning*. It is idiomatic rather than dialectic, and is believed to obtain in this sense throughout the country where so applied. This is sufficient. Such a petition need not follow the language of the statute and be drawn with the accuracy of an indictment. Nothing is required but the substance of what is necessary to be stated, intelligibly expressed. The deed of Spotts to Lucas is relied upon to disprove the seizin. That deed, we have shown, can have no such effect. The record of deeds in the proper office, as it stood, showed the seizin of the decedent, and that was sufficient. No one was bound to look further, and it was conclusive upon all concerned.

It does not appear that Williams was not the public administrator, and if he were not, that there was any such officer for Adams County at that time. If there was not, the appointment of Williams was proper. Error must be shown. It is not to be inferred, except where the inference is inevitable. Everything consistent with the record which would have warranted the appointment, will be presumed to have existed and to have been found and acted upon by the court.* Acts done which presuppose the existence of

---

* Conrad Schnell et al. *v.* The City of Chicago, 38 Illinois, 382.

other acts, to make them legally operative, are presumptive proofs of the latter.\* These views render it unnecessary to consider the construction of the statute contended for by the counsel for the defendant in error, whereby, in effect, *and* would be substituted for " *or;*" and also the question whether the statute, not declaring an appointment made contrary to its provisions void, is not merely directory.† . It was certainly within the jurisdiction of the court to decide both these points. The form of the letters issued to the general administrator, and to other persons when appointed, is the same.‡

It is insisted that the description contained in the petition is so defective by reason of the omission to name the meridian east or west of which the land is situated, that its terms are equally applicable to another tract in another county. Admitting this to be so, it is averred in the petition, and shown by the evidence, that the tract in question belonged to Spotts, while no such fact appears as to the other tract, and it is not pretended that it exists. This is sufficient. The decree finds all the allegations of the petition to be true. Proof of the ownership by Spotts of the tract sold was admissible to locate the description upon the proper premises, and to remove the ambiguity which was found to exist. In the case of *Dougherty* v. *Purdy*,§ as in this case, the meridian was omitted in the description, and the ambiguity was the same as here.

The land is correctly described in the schedule attached to the notice of the intended application to the court for authority to sell. This might be resorted to, if necessary, to supply the defect in the petition subsequently filed.‖ It will be presumed that the land described in the petition is the same with that described in the notice, as the descriptions harmonize as far as the former extends. Under certain cir

---

\* Bank of the United States *v*. Dandridge, 12 Wheaton, 70.
† Sedgwick on Statutory and Common Law, 368.
‡ Gales's Statutes, 702, sec. 62.
§ 18 Illinois, 207.
‖ Schnell *v*. Chicago, 38 Illinois, 383.

cumstances an averment fatally defective in a declaration may be remedied by a fuller averment in the replication.*

It was proved upon the trial of this case that the premises are situated in the Military Bounty Tract. We take judicial notice of the fact that this entire tract is situated between the Illinois and Mississippi Rivers, and all of it west of the fourth principal meridian. This also identifies the land in question.† The judicial proceedings are not defective in the particular under consideration.

The deed of the administrator to Hennen, made pursuant to the sale, is correct. No exception was taken to it. The fact that the report of the sale by the administrator, found in the clerk's office after his death, was not filed, approved, and recorded until the 30th of May, 1851, is unimportant. In *Wheaton* v. *Sexton*,‡ there had been a sale under execution and a deed by the marshal. The execution was never returned. This court said: "The purchaser depends upon the judgment, the levy, and the deed. All other questions are between the parties to the judgment and the marshal. Whether the marshal sells before or after the return, whether he makes a correct return or any return at all to the writ, is immaterial to the purchaser, provided the writ was duly issued and the levy made before the return."

The notice was correct.§ This has not been seriously questioned. The word "recorded" in the sentence at the foot of the list of lands is evidently a misprint for *situated*. It may be so read or regarded as surplusage. In either case the effect will be the same.

But there is a comprehensive and more conclusive answer to all the objections to the sale which have been considered, and to others suggested which have not been adverted to.

Upon the filing of the notice with the proof of publication, and the subsequent filing of the petition of the administrator for authority to sell, the Circuit Court had jurisdiction of the case. No presumption on that subject is necessary.

---

* Lafayette Insurance Co. v. French, 18 Howard, 405.

† White v. Herman, 51 Illinois, 245.        ‡ 4 Wheaton, 503.

§ Goudy v. Hall, 36 Illinois, 313.

Jurisdiction is authority to hear and determine.  It is an axiomatic proposition that when jurisdiction has attached, whatever errors may subsequently occur in its exercise, the proceeding being *coram judice*, can be impeached collaterally only for fraud.  In all other respects it is as conclusive as if it were irreversible in a proceeding for error.  The order of sale before us is within this rule.  *Grignon's Lessee* v. *Astor et al.** was, like this, a case of a sale by an administrator.  In that case this court said: "The purchaser under it is not bound to look beyond the decree.  If there is error in it of the most palpable kind, if the court which rendered it have, in the exercise of jurisdiction, disregarded, misconstrued, or disobeyed the plain provisions of the law which gave them the power to hear and determine the case before them, the title of the purchaser is as much protected as if the adjudication would stand the test of a writ of error; and so where an appeal is given, but not taken, in the time allowed by law."  This case and the case of *Voorhees* v. *The Bank of the United States*† are the leading authorities in this court upon the subject.  Other and later cases have followed and been controlled by them.  *Stow* v. *Kimball*‡ affirms the same doctrine.

JUDGMENT AFFIRMED.

*2 Howard, 341.          † 10 Peters, 449.          ‡ 28 Illinois, 93.