CECELIA M. ALLEN *et al.*

*v.*

ANNA McFARLAND *et al.*

150  455
176  373

150      455
f212  ³347
f212  ³349

*Filed at Ottawa June 19, 1894.*

1. WILLS—*rules of construction.* In construing a will all of its provisions are to be considered, and the true intention of the testator, if possible, thus ascertained. The intention of the testator expressed in, or fairly drawn from, his will, must control in its construction.

2. SAME—*no particular form required.* The law does not require, as a prerequisite to the validity of a will, that it shall be in accord with any particular form, or couched in language technically appropriate to the testamentary character of the instrument. However irregular in form or inartificial in expression, it will suffice, if, from a consideration of the whole instrument, may be gathered an intention on the part of the maker that a posthumous disposition of his property was by him intended.

3. SAME—*construed—whether giving an estate, or mere management.* A testator, by his will, provided as follows: "I leave all my property in the hands of my wife, C., *to manage* for the best interest of our children and herself. * * * She is to pay all my debts from the proceeds of the farm, but I give her power to sell my house and lot in W., and land in the State of Iowa, if necessary to pay debts," etc. The will also provided that the testator's farm of three hundred and fourteen acres should not be sold while his wife lived, and gave her the right to sell the coal underlying the farm, etc.: *Held*, that C., the widow, did not take an estate in fee in the farm, and that the same, upon the testator's death, passed to his three children, subject to its management by the widow during her lifetime. In such case the word "leave" did not mean "devise."

4. SAME—*whether creating a contingent remainder.* By the fourth clause of the will it was provided that the farm should not be sold while the testator's widow lived, but that on her death it might be divided among his children, or such of them as might be living at that time, to "have and to hold unto them, their heirs and assigns, forever:" *Held*, that the children did not take a contingent remainder, but a vested estate.

5. The rule is familiar that contingent remainders are not favored, and the estate will always be regarded as vested unless a contrary intention is clearly manifested. It is an indispensable requisite to a

contingent remainder that there shall be a present vested freehold estate to support it.

6. SAME—*executory devise.* A disposition of land by a testator will not constitute an executory devise where the devisee's right in the estate is vested and immediate, and is not postponed to take effect *in futuro,* or dependent upon any contingency.

APPEAL from the Circuit Court of Marshall county; the Hon. T. M. SHAW, Judge, presiding.

Mr. WINSLOW EVANS, for the appellants.

Messrs. McDOUGALL & CHAPMAN, for the appellees.

Mr. JUSTICE SHOPE delivered the opinion of the Court:

This was a bill in equity, in the circuit court of Marshall county, by Anna McFarland, and Birdie Allen, by Anna Mc-Farland, her next friend, for the purpose of construing the will of Abram Allen, of said county, deceased. The will is as follows:

"I, Abram Allen, of the town of Evans, county of Marshall, State of Illinois, being aware of the uncertainty of life, and in failing health, but of sound mind and memory, do make and declare this to be my last will and testament, in manner following, to-wit:

"*First*—I leave all my property in the hands of my wife, Cecelia Matilda Allen, to manage to the best interests of our children and herself. The said children are Charles Abram, Grace Matilda and Mary Elizabeth.

"*Second*—She is to pay all my debts from the proceeds of the farm, but I give her power to sell my house and lot in Wenona, and land in the State of Iowa, if necessary to pay debts, or other good cause.

"*Third*—I have given my sister, Amelia Allen, a note for $2000, interest at eight per cent, which must be paid yearly; and if my sister finds that the interest is not entirely sufficient to satisfy all her needs, she must have $200 yearly of the

principal; but if there is any of said money left at my sister Amelia's death, it must remain with or revert to my estate.

"*Fourth*—My farm of three hundred and fourteen acres must not be sold while my wife, Cecelia, lives, but at her death it may be divided between my aforesaid children, or as many of them as may be living at that time, to have and to hold unto them, their heirs and assigns, forever.

"*Fifth*—If it should at any time be deemed best by my wife and children to sell the coal underlying the land, for the interest of them all, I hereby empower her to do so. And further, she may, if actually necessary, and all agree to it, sell so much land for a coal shaft as is necessary for a shaft and the works pertaining thereto.

"Lastly, I appoint my wife, Cecelia M. Allen, the executrix of this my last will and testament. My will is that she shall not be required to give bond or security to the judge of the probate for the faithful execution of the duties of executrix."

It is alleged in the bill, and admitted in the answer, that publication and probate of said will were duly made; that the testator left surviving him, his widow, Cecelia Matilda Allen, still in life, and the three children named in the will; that the complainant, Anna McFarland, was married to the said Charles Abram Allen, and there was born, issue of said marriage, the complainant Birdie Allen; that said Charles A. Allen, subsequent to the death of the testator, died, leaving said complainants his widow and heir-at-law; that the testator, Abram Allen, died seized of the real estate mentioned in the will, and personal property inventoried at about $3000; that the widow, Cecelia M. Allen, took possession of all of said property, managed and controlled it, and received the rents, issues and profits, and, since the death of said Charles, denies that the said Anna, widow of said Charles, and said Birdie Allen, have any interest in said land of Abram Allen. The bill prays for construction of the will, alleging that said Birdie is entitled to the one-third of said devised estate, and

said Anna, complainant, entitled to dower therein, and for decree fixing and establishing the several interests therein, etc., and requiring an accounting for the rents, issues and profits of the lots and lands, received by the said Cecelia Matilda, and requiring her, on some short day to be fixed, to pay to complainant Anna McFarland the portion to which she shall be found entitled, and to the said Birdie, or her guardian, when appointed, the share or portion thereof to which she is found to be entitled, and for general relief. The answer denies the interest of the complainants in the premises, and their right to an accounting for the rents and profits, etc.

The court, after finding the facts practically as alleged in the bill, found that, under and by said will, immediately upon the death of Abram Allen, the said Cecelia Matilda Allen thereby became seized in fee of all the real estate above described, in trust, for the benefit of herself and said Charles Abram Allen, Grace Matilda Allen and Mary Elizabeth Allen, and that upon the death of said Charles Abram Allen, Birdie Allen, complainant, became seized of the equitable undivided one-fourth interest in said real estate so held in trust for said Charles Abram Allen, subject, however, to the dower interest of said Anna McFarland therein, which right of dower the court finds in said Anna McFarland. The court further found that the said Cecelia Matilda Allen, as trustee, is subject to be called upon by any of the parties in interest, for an account of the management of her said trust, etc. The defendants below appeal, and both parties assign error upon the record.

It is too familiar to now require citation of authority, that in construing a will all of its provisions are to be considered, and the true intention of the testator, if possible, thus ascertained, and that the intention of the testator, expressed in or fairly drawn from his will, must control in its construction. It is also familiar that the law has not required, as a prerequisite to the validity of a will, that it be in accord with any particular form, or couched in language technically ap-

propriate to the testamentary character of the instrument. However irregular in form or inartificial in expression, it will suffice, if, from a consideration of the whole instrument, may be gathered an intention on the part of the maker that a posthumous disposition of his property was by him intended. 1 Jarman on Wills, 33.

The will in this case may well be said to be *sui generis,* as the research of counsel, and our own, has failed to discover a single case where a will similar to this has been construed by the courts, and, indeed, we think none can be found. Aside from the established principles which always obtain with the courts in the construction of wills, nothing has been found in the decided cases to materially assist in the inquiry.

It is insisted by counsel for appellant, that the widow, Cecelia Matilda Allen, became entitled, under the will, to the whole of the testator's property, absolutely. We can not concur in this view. The first clause of the will is: "I leave all my property in the hands of my wife, Cecelia Matilda Allen, to manage to the best interests of our children and herself. The said children are Charles Abram, Grace Matilda and Mary Elizabeth." It is at once apparent that in this clause of the will, which, it is practically conceded, is the only one under which a devise to the widow is made, contains no appropriate words of devise, or such language as is ordinarily used in making testamentary bequests. There being no technical meaning in the words as here used, nor, as it would seem, that the testator attached to them any other than their usual and natural signification, we must read them in their ordinary and grammatical sense, inasmuch as this would seem to be not inconsistent with the meaning imputed to them by the testator, or with his intention, as derived from a consideration of the whole of the instrument. Hawkins on Wills, p. 2; *Abbott* v. *Middleton,* 7 H. L. C. 68.

What did the testator mean by the words, "I *leave* all my property in the hands of my wife  *  *  *  to manage," etc. ?

In *Thorley* v. *Thorley*, 10 East, 456, the testator gave his estate to his wife during her natural life, and "also at her disposal afterwards, to leave it to whomsoever she pleases," and it was there held that the word "leave" meant that she might dispose of it by will, only.    Also, in *McNitt* v. *Turner*, 16 Wall. 363, the word "leaving" was held to be used in the sense of "owning."   These are the only cases we have been able to find where an attempt to define the word "leave" has been made, and it is obvious that the meanings there attributed to the word can not obtain here.   In the *Thorley case*, unlike the case at bar, there was no restriction or limitation imposed as to its operation.    The property was at the disposal of the wife, to leave to whom she pleased, and the construction there given to the word was thought by the court to better accord with the intention of the testator, as thereby the subject of his bounty would be mostly benefited, for she would then retain her power of disposition to the end of her life.   Here, the testator leaves all his property in the hands of his wife, "*to manage* to the best interests" of the children and herself.   No power of appointment or distribution is given, but only that of disposition, in the sense, as we think, a personal representative of the deceased would exercise the same power,—that is, to the best interests of the widow and children and of the estate.   And this power is solely, with respect to the Iowa land and Wenona property, to be exercised in case the proceeds of the farm, which is not to be sold in any event, are not sufficient to pay the debts, or for other good cause.

What would have been the effect had the testator, instead of using the language he did, said, "I leave all my property in the hands of (or to) my wife," without the addition of the qualifying words "to manage," etc., need not here be determined. But it may be said, that in the absence of any other language in the will clearly indicating a different or contrary sense, such terms might, in a proper case, be construed as words of devise, where the paper produced is shown

to be the act of the deceased, and that it was made *animo testandi.* (1 Jarman on Wills, 34, note 7.) And especially might this be so where the beneficiaries therein named are the natural objects of his bounty. Nor need we here determine what would have been the effect had the widow been given an unrestricted power of disposition, (3 Jarman on Wills, 34, note,) or such power to be exercised by her during her lifetime or widowhood. *Boyd* v. *Strahan,* 36 Ill. 358; *Mulberry* v. *Mulberry,* 50 id. 67.

The word "leave," as defined by Webster, means: "6. To put; to place; to deposit; to deliver; to commit; to submit; —with a sense of withdrawing one's self from." By Worcester, as: "1. To let, permit, or suffer to remain. 6. To refer for decision." And we think the sense here indicated is that in which the word "leave" was used by the testator,—that is, he simply meant to put, place, deposit, deliver or commit all his property into her hands to manage, etc. It was all referred to her for decision,—manage to the best interests of the children and herself. He *gives* her no estate or interest therein. When he desires to invest her with a particular power, he does so by the apt words, "I give her power," thereby indicating, it seems to us, a clear understanding on the part of the testator of the meaning and force of the respective terms,—that is, the meaning and volume of the word "leave," as used in the first clause, and of the word "give," as used in the second clause of his will. But if this were not so, and if it be said that the word is susceptible of being used in the sense of "to bequeath," "to give by will," etc., (Worcester, 9th def.; Webster, 7th def.;) the testator has here, as we have seen, expressly limited and restricted the meaning and operation of the term. This construction is aided and borne out by the subsequent clauses of the will, where the testator takes especial care to give his wife power and authority in respect of property therein mentioned, thereby indicating, as we think, that he did not regard the first clause of the will as sufficient

for the latter purpose. It can not, therefore, be said that the testator, by the use of the words, "I leave all my property in the hands of my wife, to manage," etc., thereby meant to express an intention to give, devise and bequeath unto his wife all his property.

In *Crockett* v. *Crockett*, 1 Hare, 451, the widow claimed the estate absolutely, and the provision of the will there in question was, that all the testator's property "should be at the disposal of his most true and lawful wife, Caroline Crockett, for herself and children," etc., and it was held that the children took a vested interest in the testator's property at his death, and that a joint tenancy was created. (*Crockett* v. *Crockett*, 5 Hare, 326.) In the latter case, the petitioner having become of age, his share of the estate was ordered paid to him.

No language is to be found in the will under consideration inconsistent with an intention on the part of the testator that his estate should pass to and vest in his children,—the natural objects of his bounty. If his intention had been to give his estate to his wife, absolutely, it is to be presumed he would have expressed himself in terms at least as explicit as he employs in conferring upon her power to sell. When the testator desired to expressly confer a power or make disposition, it is apparent, from other provisions of the will, that he had no difficulty in using apt and appropriate terms. This is clearly shown in giving power to his executrix to sell to pay debts, in the devise to his sister, and the disposition that may be made of the coal underlying his land.

The authority and duties of the widow, under the will, can not be regarded as postponing, or as incompatible with, the vesting of the title in interest in the heirs-at-law, nor as indicating that it was the intention of the testator that the widow should take an interest in the property in fee. The right of present enjoyment in possession by the heirs-at-law is postponed and the possession of the estate committed to the wife during her life, to be by her managed for the joint

benefit of herself and the children of the testator named in the will. It will be unnecessary to define with accuracy the interest that the wife took in the land,—it is apparent that she took less than an estate in fee for her life. The power of alienation is wanting. To derive the benefit given by the will she must continue in its management and possession. It will in nowise elucidate the subject under discussion to determine the particular quality or character of her estate. That the possession and management of the estate are given to her for the purposes mentioned in the will, is, we think, unquestionable.

But it is further insisted, that by the fourth clause of the will a devise might have been intended, and that as to the land therein mentioned the children would take a contingent remainder. No such construction can, we think, obtain. This provision was evidently made in view and recognition of what had preceded. The will must be construed all together, to learn, if possible, the true intention as to the disposition of the testator's estate. The testator had already left *all* his property in the hands of his wife to manage, etc., and now merely gives direction that said land must not be sold while his wife lives, but at her death it may be divided among his said children, or such of them as may be living at that time, etc., thereby creating no estate, but in all probability having in mind the preservation of the farm intact, as a resource from which the wife might derive support for herself and children until her death. And we think by the words "it may be divided," etc., he simply intended to re-enforce and emphasize what he had already said,—that is, that the farm was not to be sold, but was to be kept undivided and intact until the death of his widow, when, as a matter of course, it might be divided, and not before that time. And it could not well be contended that these words of the will are to be regarded as an inhibition of a sale or other disposition of the land *en masse,* which the children might see proper to make after

the death of the widow, although·then, by the terms of the will, "it may be divided." It would therefore seem plain that· these are neither words of devise nor command, but of direction, merely.

It will be unnecessary to here enter upon a discussion of the doctrine of vested and contingent remainders. The rule is familiar, and requires no citation of authority, that contingent remainders are not favored, and the estate will always be regarded as vested, unless a contrary intention is clearly manifested. No such intention can, we think, be derived from a construction of this will, and it is clear to us that the estate here must be regarded as vested, and not contingent. See *Blanchard* v. *Blanchard,* 1 Allen, 223; *Price* v. *Hall,* 5 Eq. (L. R.) 399; *Doe dem. Poor* v. *Considine,* 6 Wall. 458. Moreover, the indispensable requisite to a contingent remainder of a present vested freehold estate to support it is here wanting. The wife took no estate upon which a remainder might be limited over. Nor did this clause as to the children constitute an executory devise, as their right in the estate was vested and immediate, and was not postponed to take effect *in futuro,* or dependent upon any contingency. 2 Blackstone's Com. 173.

We are of opinion that, *eo instanti,* the death of the testator, the estate vested in his heirs-at-law, charged with the power given to the wife by the will to manage the same during her lifetime, for the benefit of herself and the children of the testator, and of disposition to pay debts, etc. There was necessarily given to the wife a beneficial interest growing out of the proceeds of the estate under her management of it. As already seen, it was to be managed for her benefit, as well as that of the children. It was in the contemplation of the testator that she would pay the debts of his estate out of such proceeds, but if, for any cause, it became necessary, power was given to sell the Wenona property and Iowa land for that purpose. The thought of the testator seems to have been, to

leave his estate under one management during the lifetime of his wife, to be controlled as he had controlled it, in the interest and for the benefit of the family. The leasing of the right to mine coal underlying the land was permitted to the widow, if for the benefit of all concerned, and it is only when a provision is made for a leasing of a portion of the surface of the home farm for the purposes of a coal shaft, that the consent of the children is required. It is apparent that his wife was intended by him to take his place in the management of his estate, and was clothed with a broad, and practically unlimited, discretion in such management. He seems to have had great confidence in her integrity and ability to manage the estate, and left to her discretion, without restriction, what would be management in the interests of herself and children.

It might well be that in case of clear abuse or perversion of the discretion reposed in the widow, or upon her refusal to reasonably nurture, maintain and educate the children of the testator, a court of equity might, upon appropriate bill filed, afford relief, and compel a reasonable distribution of the proceeds of the estate to such uses. But that question is not here presented, and however inviting the field, no discussion of the questions that would then arise would now be proper.

Other questions are presented, but the construction already given to the will under consideration precludes their discussion.

We are of opinion that the circuit court erred in its construction of said will, and its decree will be reversed, and the cause remanded for further proceedings not inconsistent with this opinion.

*Decree reversed.*