## Madeline G. Kirk et al., Appellants, v. Susie McVean Kirk et al., Appellees.

## Gen. No. 15,885.

1. WILLS—*what considered in construing.* In construing a will courts of equity will consider the facts and circumstances surrounding the testator as they existed at the time the will was made.

2. WILLS—*when trust not created in favor of children of beneficiary.* Held, under the terms of the will in question in this case, that a trust was created in favor of the son of the deceased with power of appointment by will and that no trust was created in favor of the unborn children of such son which required the administration of the trust in favor of such son and such children after born.

3. WILLS—*phrase "for the support of himself and family" construed.* Held, in this case, that the words "for the support of himself and family," merely expressed the purpose or motive which moved the testator to make the devise, and did not create a trust in favor of such family.

Bill in chancery. Appeal from the Superior Court of Cook county;

the HON. CHARLES E. BARNES, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1909. Affirmed. Opinion filed November 14, 1911.

**Statement by the Court.** This appeal brings up for review the action of the court below in entering a decree dismissing a bill of complaint brought by the appellants represented by their mother, Madeline G. Kirk, as guardian (the complainants being minors), against appellees.

The pleadings under which the decree was entered consist of an amended bill, the demurrer thereto by the appellee, James M. Kirk, the answer of the appellee, Susie McVean Kirk, and the replication to this answer. The demurrer of James M. having been sustained, the case was referred to a master in chancery upon the answer of Susie McVean Kirk.

The master in his report found that the complainants were not entitled to the relief prayed for in their bill, and recommended that the bill be dismissed.

The allegations of the amended bill are substantially as follows: that Madeline G. Kirk was married to James M. Kirk, one of the appellees, on November 21, 1891, and that the complainants were and are the only children born of the marriage; that the oldest of the complainants, John B. Kirk, was born in 1892, and the youngest, Grace Madeline Kirk, in 1898; that Madeline G. and James M. lived together as husband and wife until 1899; that on March 24, 1899, in the Superior Court of the county of Los Angeles, California, where all the parties then resided, a decree of divorce was granted in favor of Madeline G., wherein it was duly adjudged that her husband, James M., had been guilty of extreme cruelty; that by the decree the care, custody and control of the four minor children complainants were awarded to her; that after the divorce James M. departed from California and took up his residence in Chicago, where, complainants are informed, he was

married again on October 10, 1907; that prior to the
filing of the bill Madeline G. was made guardian of the
complainants, and has ever since acted as such; that
the said Madeline G. continued to live in the city of
Pasadena and to support the complainants to the best
of her ability; that with the exception of one hundred
dollars which he sent to the complainants on or about
Christmas, 1903, the appellee James M. has not con-
tributed directly or otherwise to the support, care and
maintenance of the four minor complainants; that the
appellee James M. is the son of John B. Kirk, who in
his lifetime resided in Evanston, Illinois, and died
about November 3, 1904, leaving an estate of upwards
of $500,000; that said John B. Kirk left a will, by the
first paragraph or clause of which all furniture, house-
hold goods, etc., were devised to the appellee, Susie
McVean Kirk. The second paragraph or clause of
said will reads as follows:

"Second:—All the rest and residue of my estate I
give, devise and bequeath as follows: One-third (1-3rd)
to my said wife; one-sixth (1-6th) to my son, Frederick
Irving Kirk; one-sixth (1-6th) to my daughter, Jose-
phine Kirk; one-sixth (1-6th) to my daughter, Susan
Kirk, and the remaining one-sixth (1-6th) to my said
wife, upon the following trusts: To pay the income
thereof to my son, James Milton Kirk, for the support
of himself and family so long as he shall live, and upon
his death to pay the whole of the trust estate, with ac-
cumulations, if any, to such person or persons as my
said son, James Milton Kirk, shall, by last will and tes-
tament, appoint, or in case of failure of such appoint-
ment, to my heirs at law who shall then be living, in
such shares as they would receive if the same descend-
ed to them as intestate estate.

My wife may appoint a successor in trust by written
instrument in her lifetime, or by last will and testament.
My wife, as trustee, and any successor in trust appoint-
ed by her, may make advances to said son, James Mil-
ton Kirk, from the principal of the trust estate, when-

ever she or her successor deems it for the best of my said son so to do. Full power and discretion is given to my said wife and any successor whom she may appoint, to make such advances, even to the whole amount of the trust estate, but my said son shall not have the right to compel any such advance, nor the right to anticipate the payment to him of any portion of the trust estate, either income or principal, and the same shall not, nor shall any part thereof, be liable to be taken by his creditors, and if my son shall commence any legal proceedings to compel any payment to him from the principal of said trust estate, against the discretion of my said wife, or any successor in trust whom she may appoint, he shall forfeit all interest in my estate.

Full power is given to my said wife, as trustee, and to any successor in trust whom she may appoint, to invest any portion of the trust estate, and to change the investment thereof from time to time subject, however, to the provisions hereinafter contained, and said trustee, or any successor whom she may appoint, may sell and convey any real estate or interest in real estate which may, at any time, belong to the trust estate, and the purchaser need not look to the application of the purchase money. My wife shall not be required to give any bond as trustee, but any successor in trust shall be required to give bond.''

The bill further alleges that the complainants are informed that Susie McVean Kirk, appellee, as trustee, has paid certain portions of the income of the trust estate since the death of John B. Kirk in November, 1904, to the appellee James M., and that the said James M. has certain proceeds of the said trust fund now in his possession and refuses to account to the complainants or to any of them for any portion thereof; that Susie McVean Kirk has never paid to any one of the complainants any portion of the income but refuses to do so; that complainants are informed and believe that the said Susie McVean Kirk has not made advances from the principal of the trust estate to the said James

M., but has retained said principal intact and has only paid over certain portions of the income thereof to James M.

The bill further alleges that the will of John B. Kirk was duly admitted to probate in Cook county, Illinois, and that the estate at the time of the filing of the bill was in process of administration; that complainants are informed that the income from the trust estate received by James M. amounts to more than $6,000 per annum, and that the principal of the trust estate consists of bonds and stocks, and particularly of stock in James S. Kirk & Co. of the value of $100,000.

The prayer of the bill is that the defendant be required to account to the complainants for all of the income of the trust estate received by them or either of them, and to pay over to the complainants and each of them the share of said income to which each is equitably entitled, and that the defendants or one of them may be decreed to make provision for the proper support and maintenance of complainants, according to the station in life of the said James M. Kirk. An injunction is asked against defendants restraining them from disposing of all or any portion of the income of said trust fund until further order of the court.

In her answer the appellee, Susie McVean Kirk, stated that on January 27, 1905, by an instrument of that date under seal, she elected in pursuance of the discretion conferred upon her by the will to convey, and did convey, all of the property which had or might thereafter come into her possession, ownership and control under and by virtue of the trust of James M. created by the will of John B. Kirk, and that since that date she has not had in her possession or control any portion of the property so left in trust; that the estate of the said John B. Kirk was declared to be settled and that she, as executrix, was discharged in the Probate Court on December 21, 1907.

Eddy, Haley & Wetten, for appellants; Arthur J. Eddy, of counsel.

Chipman & Jackson, for appellee, James M. Kirk; George E. Chipman, of counsel.

Holt, Wheeler & Sidley, for appellee, Susan Mc-Vean Kirk.

Mr. Justice Clark delivered the opinion of the court.

The first question we are called upon to decide is whether or not the demurrer filed by the appellee James M. Kirk was properly sustained. The determination of this question involves the construction of the second paragraph of the will above set forth, in so far as it creates a trust of one-sixth of the testator's estate, the language used being, "to pay the income thereof to my son, James Milton Kirk, for the support of himself and family so long as he shall live," etc.

The contention of the appellants is that the word "family" should be held *prima facie* to mean children; that the words of the will just quoted when properly construed establish a trust for the benefit of the children of the appellee, James Milton Kirk; that while the will contemplated the payment of the income direct to James Milton Kirk, the intention of the testator was that if James Milton Kirk should not use the income or a portion of it for the support of his family, or children, then the duty was imposed upon his mother, the trustee, to divide the income among him and his four children.

Appellees, on the other hand, insist that the words "for the support of himself and family" merely indicate the motive for the gift to James Milton Kirk, which is absolute in its terms and cannot be cut down or affected by the addition of such words; that by the word "family" in the will is meant the persons from time to time residing in the household of James M., of

which he was the head; that even if it be conceded that there is a trust in favor of the family of James M. under the father's will, the appellants are not, while residing apart from their father's household, entitled to be considered as beneficiaries under the will.

It is an elementary principle of law that in construing a will courts of equity will consider the facts and circumstances surrounding the testator as they existed at the time the will was made. Wallace v. Foxwell et al., 250 Ill. 616. When the will now under consideration was made the appellee, James Milton Kirk, was married and living with his wife, Madeline. The oldest of his children, the appellants here, was born during that year, but some months after the execution of the will. The will of course took effect on the date of the death of the testator. Between the making of the will and the testator's death circumstances had changed. The four complainants were born and a divorce had been granted to Madeline from their father, James M., who was not, and had not been for some time prior to the testator's death, supporting the wife or the children.

Appellants' contention as heretofore stated is that the "family" of James M. consisted at the time of the death of his father of the four children, and that notwithstanding the appellee James M. remarried some time after his father's death, his second wife is not entitled to her support from the income of the trust estate and that the children, if there are any, of the second marriage are also not entitled to their support from such income, but that the whole of the income must be divided among the four children appellants and James M. upon some equitable basis, the exact terms of which are not stated in the bill but presumably are to be fixed by the court in the decree.

The case cited by the appellants which they persuasively argue is peculiarly in point is that of Chase v. Chase, 84 Mass. 101. The language used in the will

involved in that case is as follows: "To pay the income and interest thereof to my son, Philip Brown Chase, of Philadelphia, every year during his natural life for the support of himself and family," etc. After holding that it was the intent of the testator to give the benefit of the income of the trust fund created by his will to the wife and children of his son Philip, as well as to the son, the court said:

"The trustee who by the terms of the will holds the principal in trust, out of which the income is to be raised and paid over to the son Philip for the support of himself and family, is a resident in this commonwealth. Upon satisfactory proof that the income is misapplied by the sub-trustee, to whom by the will he is directed to pay it, the court can enjoin the trustee, who is within the jurisdiction, from making further payments, and pass such decrees in relation to the future disposition of the income as the rights of the *cestui que trust* may in equity require."

This decision was rendered in 1861, and the contention of appellees is that it has in effect been overruled by later cases in Massachusetts, viz: Taft v. Taft, 130 Mass. 461; Aldrich v. Aldrich, 172 Mass. 101; Lloyd v. Lloyd, 173 Mass. 97; Pitts v. Milton, 192 Mass. 88.

In the last named case, after holding that no express trust was created, the court says:

"The intention of the testator when ascertained must control, and for this purpose the entire clause, which is the only portion of the will appearing in the record, must be considered."

In the second paragraph of the will we are now considering, the testator provided that upon the death of his son, James M., the whole of the trust estate, with accumulations, should be paid not to the children of James Milton but to "such person or persons as my said son, James Milton Kirk, shall by his last will and testament appoint," or, in case of failure of such appointment, to the heirs at law of the testator. The will further gives full power and discretion to his wife, as

trustee, or her successor "To make advances from the principal of the trust estate, even to the whole amount thereof, to James Milton Kirk." It provides that he shall not have the right to compel such advances, nor to anticipate the payment to him of any portion of the trust estate, either income or principal. The testator by this clause did not leave it discretionary with the trustee to withhold the income or any portion of it from his son James Milton.

While the trust has been characterized in the argument as a "spendthrift trust," it is apparent that the testator had sufficient confidence in his son to induce him to provide for the payment to the son of the entire income, without leaving it to the discretion of his wife, as trustee, to determine whether or not payment of the income should from time to time be withheld. The will is different from that in the case of Chase v. Chase, *supra,* to the extent that in the latter case the will provided that upon the decease of the son the trustees or survivor of them should divide the principal of the trust fund then in their hands in equal portions among all the issue of the said son. In the case before us, the testator showed his confidence in his son by providing that the estate, with accumulations, should at the death of the son go to the persons named by him in his will, if he left such will.

The attitude of the testator in the respects mentioned tends, in our opinion, to negative the idea that the testator at the time he made the will had it in mind to create a trust in favor of the unborn children of his son, and to impose upon his wife, as trustee, the power and duty to divide the income of the trust estate in her discretion between the son and the son's children if there were any at the time of the testator's death.

The case before us is distinguishable from that of Brooks v. Raynolds, 59 Fed. Rep. 923, cited by appellants. In the will involved in the case last mentioned the testator in unmistakable terms authorized his

executor to withhold from the son all or any part of the income of the trust fund.

In the case of Kehoe v. Ames, 96 Me. 155, cited by appellants, the payment of the income was by the will also expressly left to the discretion of the trustee, and the reversion and remainder of the trust estate on the death of the *cestui que trust* named in the will were devised to the lawful issue of the *cestui que trust*.

In Summers v. Higley, 191 Ill. 193, also cited by appellants, the court had before it a will devising to the testator's wife all of his estate, "to be used by her for her own support and for the maintenance and education of my children as herein named, to-wit, Laura A. Summers, Edward Summers, Martha A. Summers and William Summers." By the second paragraph of the will the wife, as executrix, was empowered to bestow sums of money on the father of the testator from time to time in case of his becoming so infirm as to be unable to support himself. The third paragraph of the will provided that in case the death of the wife of the testator occurred before any of the children theretofore named attained their majority, whatever of the estate should be left when the youngest child arrived at the age of twenty-one years should be divided among the children share and share alike. The court held that the intention of the testator to create a trust was made clearly apparent by these two paragraphs of the will.

Our attention has been called by the appellees to the following cases decided by the Supreme Court of this state: Bryan v. Howland, 98 Ill. 625; Randall v. Randall, 135 Ill. 398; Allen v. McFarland, 150 Ill. 455; Maurer v. Bowman, 169 Ill. 586; Dee v. Dee, 212 Ill. 338.

In Bryan v. Howland there was a conveyance to a parent in trust for his son, and to permit the son "to use, occupy, possess, enjoy, improve, rent and build upon the said tracts of land in any manner he may deem best, for the support, maintenance and benefit of himself and his children, during his natural life." It was

contended that the son was a trustee for the children. In overruling the contention the court said:

"Undoubtedly the motive in vesting the property thus was to furnish means to aid Henry Allen Howland in supporting and maintaining himself and children. But although the courts have gone to great lengths in holding language expressive of a wish or request sufficient to establish a trust, it has never been held that the mere expression of the motive for a grant, etc., is sufficient to establish a trust."

The court quotes with approval Perry on Trusts (page 119):

"But no trust is implied where the words simply state the motive leading to the gift, as, where the gift is to a person to enable him to 'maintain the children,' or an absolute gift is made, and the motive stated 'that he may support himself and children.'"

In Randall v. Randall the will was that of the wife vesting title of the property whereof she might die seized or possessed, in her husband, the language used being, "To provide, to the extent of my ability, for the support and education of such of my children as shall be unmarried and minors, and such of the married or adult ones as may, by innocent misfortune, become really needy, I give and bequeath to my beloved husband, Sylvester W., the father of my children, all my property, whether real, personal or mixed, that he may use the same for the maintenance and education of my said children, and that he may, from time to time, advance to each of them, as he may deem best, to start them in life." The court held that no trust was created which constituted the children beneficiaries, and reiterated what was said in Bryan v. Howland—"No trust can be implied merely from the words indicating the motives which induced the gift."

In Allen v. McFarland the language of the will was: "I leave all my property in the hands of my wife, Cecelia Matilda Allen, to manage to the best interests of our children and herself." Upon a bill being filed

to compel the widow to account to the children for the rents and profits, on the theory that the children had an equitable interest therein, the court held that no trust was created in favor of the children.

In Maurer v. Bowman a case was presented where the testator bequeathed his property to one of his creditors, who was a brother-in-law, and the following language was used: "To have the proceeds, rents, profits and issues thereof, for the purpose of paying my debts, including his own claims against me hereinafter stated, and for the purpose of rearing and educating my children, and for the support of my wife should she need it." The court held that a decree dismissing a bill for an accounting brought by the heirs of the testator should be affirmed, and based its decision largely upon Randall v. Randall, *supra*.

In Dee v. Dee the language of the will in controversy was: "I give and bequeath to my beloved wife, Hanorah Dee, all of my property, both real and personal, to her use during her life or as long as she shall remain my widow, to receive all the rents and profits thereof, for the benefit of my family, and at her decease to be divided as follows, to-wit," etc.: The court said:

"Authorities cited by the appellant show that the devise of the property to Hanorah Dee to her use, for the benefit of another or others, specifying them, is the proper formula for the creation of a trust for the benefit of such other or others. The difficulty about the aplication of this doctrine in the present case is the fact that the term here used is 'for the benefit of my family.' Did the testator by that expression mean to require an equal division of the rents and profits among his wife and all his children, giving one twelfth to each? If so, a trust was created. If, on the other hand, it was the mere expression of the purpose or motive which moved him in making this devise, no trust exists."

The court held further that there was no question but that after the death of his wife it was the intention of the testator that his property should be divided among

his children, and that, in the opinion of the court, if it had been his purpose to have the income from the property divided in the same manner or divided equally among the children and their mother he would have used language indicating that purpose with greater certainty.

So, too, in the case now before us, we are of the opinion that if the testator, John B. Kirk, had intended to protect the wife of his son or the unborn children from the improvident acts of the son, he would have used language clearly indicating that intention, and would have authorized and directed his wife, as trustee, to withhold from the son from time to time such portions of the income as might be necessary to effect the intention.

Our conclusion therefore is that the words, "for the support of himself and family," merely express the purpose or motive which moved the testator to make the devise, and create no trust.

We feel that this conclusion is fully sustained by the decisions of our own Supreme Court, as well as by many decisions in other jurisdictions, to which we have been cited, among others the following: Crandall v. Hoysradt, 1 Sandf. Ch. 40; Clarke v. Leupp, 88 N. Y. 230; Small v. Field, 102 Mo. 104; Mason v. Sadler, 59 N. C. 148; Rowland v. Rowland, 29 S. C. 54; Rhett v. Mason's Exrs., 18 Gratt. 541; Seamonds v. Hodge, 36 W. Va. 304; Smith's Estate, 27 Pa. Superior Court 494; Mackett v. Mackett, 14 L. R. Eq. Cas. 49.

Having held that the court properly sustained the demurrer of the appellee James M. Kirk, it is unnecessary for us to consider the questions raised upon the answer of Susie McVean Kirk. In our opinion the court would have been justified in entering a decree dismissing the bill without referring the cause to a master upon the answer.

The decree will be affirmed.

*Decree affirmed.*