Warner *v.* Bates.

WILLIAM A. WARNER *vs.* GEORGE BATES.*

A widow, having two sons and a daughter and an estate secured to her separate use, married and had issue another daughter, and until her death, twenty-five years after this marriage, lived with these children and her husband in her house as one family, the maintenance of which was chiefly defrayed from her income under his care and management. By her will she gave upon the death of her husband one half of her estate to the sons, and the other half in trust for the daughters, using apt and technical words in creating this trust, and meanwhile gave to her husband for his life the use and income of the estate "in the full confidence that he will, as he has heretofore done, continue to give and afford my children such protection, comfort and support as they or either of them may stand in need of." *Held,* that these words subjected such use and income to a trust which could be enforced in equity.

BILL IN EQUITY filed September 4, 1865, by a son of Sarah I. Bates, deceased, seeking for a decree to enforce performance by the respondent, his step-father, of a trust created by her will.

The bill alleged that on December 12, 1833, the deceased, being a widow, having a daughter and two sons, of whom the complainant was one, and owning property to the amount of more than a hundred thousand dollars, was married to the respondent, and her property secured by a settlement from any marital right or claim which otherwise he might have thereto ; that thereafter, until her death on May 17, 1859, she and the

* This case was argued in November 1866.

respondent, with these children, and with another daughter, the issue of this marriage, lived together as one family in her house, where she and her children had formerly resided; that the expenses of maintaining the family in a liberal style suitable to their circumstances were defrayed chiefly from the income of her property, the respondent having but little property of his own, but acting as the head of the family, having the general care thereof, and managing the funds for its maintenance; and that she left a will of which she named the respondent sole executor, and an estate of which there was a large residue after paying her debts.

This will was set forth in the bill; bore date of December 30, 1857; was indorsed with the approval of the respondent under date of October 1, 1858; was amended by a codicil dated April 14, 1859, in particulars not needful to be recited; and disposed of the estate during the respondent's life as follows:

" I give and bequeath unto my husband, George Bates aforesaid, the use, income and improvement of all the estate, real, personal and mixed, of which I shall die seised and possessed, for and during the term of his natural life, in the full confidence that upon my decease he will, as he has heretofore done, continue to give and afford my children," [enumerating them] " such protection, comfort and support as they or either of them may stand in need of."

Upon the death of the respondent, it gave one half of the estate to the complainant and his brother; and the other half to three persons designated by name, " and to the survivors or survivor of them, their or his executors, administrators or assigns, to have and to hold the same upon and for the uses, trusts and purposes mentioned and expressed of and concerning the same," and then set forth minutely certain trusts for the benefit of the two daughters.

The bill further alleged that, after the death of the testatrix, the respondent, under the clause of the will first above quoted, took possession of the estate remaining after payment of the debts; that the complainant with his brother and unmarried sister continued to reside in the house as before, and to receive from the respondent, without payment or charge therefor, the

benefits and privileges which children of their condition usually
receive in their own families, until, on or about April 1, 1863, the
respondent, in the complainant's absence, removed the complain-
ant's effects from the house, and ever since forbade and prevented
him from coming into it, and neglected and refused to give him
the said benefits and privileges which he had before enjoyed, or
make him any reasonable compensation instead thereof; that
in 1850 the complainant became and ever afterwards was a
clerk in a counting-room in Boston; that up to the time of his
mother's death his salary had never exceeded four hundred dol-
lars per annum, which fact she well knew; that in 1858, 1859
and 1860, it was at that rate, but from 1860 to 1864 did not in
any year exceed two hundred dollars; that from 1864 until the
filing of this bill it was at the rate of six hundred dollars per
annum; that at the time of his exclusion from the house in
1863 he had saved from his salary of previous years only two
hundred and fifty dollars; that afterwards, during that year, in
order to obtain means for his support, he sold for seven hundred
dollars his reversion of some land belonging to his mother's es-
tate; that these two sums, together with his salary, included all
his means of support, except such provision as was made for
him in the will, and were and are wholly inadequate thereto;
that he stood in need of such support as he had been accus-
tomed to receive in his mother's lifetime; and that the respond-
ent, though well aware thereof, and often requested therefor,
efused to give it.

The respondent filed a general demurrer; and the case was
reserved by *Chapman*, J., for the consideration of the full court.

*E. D. Sohier & C. A. Welch*, for the respondent.

*G. O. Shattuck & J. B. Thayer*, for the complainant.

BIGELOW, C. J.  We see no sufficient ground for calling in
question the wisdom or policy of the rule of construction uni-
formly applied to wills in the courts in England and in most of
the United States, that words of entreaty, recommendation or
wish, addressed by a testator to a devisee or legatee, will make
him a trustee for the person or persons in whose favor such
expressions are used, provided the testator has pointed out with

clearness and certainty the objects of the trust, and the subject matter on which it is to attach or from which it is to arise and be administered. The criticisms which have been sometimes applied to this rule by text writers and in judicial opinions wih be found to rest mainly on its applications in particular cases, and not to involve a doubt of the correctness of the rule itself as a sound principle of construction. Indeed, we cannot understand the force or validity of the objections urged against it, if care is taken to keep it in subordination to the primary and cardinal rule that the intent of the testator is to govern, and to apply it only where the creation of a trust will clearly subserve that intent. It may sometimes be difficult to gather that intent, and there is always a tendency to construe words as obligatory in furtherance of a result which accords with a plain moral duty on the part of a devisee or legatee, and with what it may be supposed the testator would do if he could control his action. But difficulties of this nature, which are inherent in the subject matter, can always be readily overcome by bearing in mind and rigidly applying in all such cases the test, that to create a trust it must clearly appear that the testator intended to govern and control the conduct of the party to whom the language of the will is addressed, and did not design it as an expression or indication of that which the testator thought would be a reasonable exercise of a discretion which he intended to repose in the legatee or devisee. If the objects of the supposed trust are certain and definite; if the property to which it is to attach is clearly pointed out; if the relations and situation of the testator and the supposed *cestuis que trust* are such as to indicate a strong interest and motive on the part of the testator in making them partakers of his bounty; and above all, if the recommendatory or precatory clause is so expressed as to warrant the inference that it was designed to be peremptory on the donee; the just and reasonable interpretation is, that a trust is created, which is obligatory and can be enforced in equity as against the trustee by those in whose behalf the beneficial use of the gift was intended. 1 Jarman on Wills, 333. 1 Redfield on Wills, § 17, cl. 11–13; § 43. 2 Storv Eq. §§ 1068–1070. *Malim* v. *Keighley,*

2 Ves. Jr. 333, 529. *Bernard* v. *Minshull*, H. R. V. Johns. 287
*Williams* v. *Williams*, 1 Sim. (N. S.) 358. *Bonser* v. *Kinnear*, 2
Giff. 195. *Knight* v. *Boughton*, 11 Cl. & Fin. 513, 551. *Har-
risons* v. *Harrison*, 2 Grat. 1. *Coate's appeal*, 2 Barr, 129.
*McKonkey's appeal*, 13 Penn. State, 253. *Erickson* v. *Willard*,
1 N. H. 217. *Van Amee* v. *Jackson*, 35 Verm. 173. The doc-
trine was recognized as an established rule of construction by
this court in *Whipple* v. *Adams*, 1 Met. 444, and *Homer* v. *Shel-
ton*, 2 Met. 194, 206.

Turning now to the clause of the will which is the subject of
the present controversy, it seems to us that it does not leave the
support of the children of the testatrix to the discretion of the
respondent, to be afforded or withheld at his pleasure, but that
the devise to him was made on the trust that he should furnish
such support so long as he lived and received the income of her
property. The objects of the trust are distinctly named. The
nature and extent of the trust is clearly stated and defined. It
was such a sum of money as might be necessary to the comfort
and support of each one of the children of the testatrix. Nor
is the amount of the beneficial interest left indefinite or without
a standard by which it can be measured. It is to be such com-
fort and support " as they or either of them may stand in need
of." The extent of such a beneficial interest can be ascertained
and enforced by suitable proceedings either at law or in equity.
*Thorp* v. *Owen*, 2 Hare, 607, 610. *Sanderson's Trust*, 3 Kay &
Johns. 497–507. *Farwell* v. *Jacobs*, 4 Mass. 634. In the last
case, it was held by this court that an action at law would lie
against an executor who was directed by the testator to furnish
support to a person in whose behalf the suit was brought. But
in the present case the phrase " comfort and support " is made
more definite and certain by an express reference in the terms
of the gift to the continuance of a previously existing state of
things in the family of the testatrix and her husband, in which
the children of the former had resided and received support
during her life. Nor is it to be overlooked that the language
addressed to the respondent in the clause of the will under con-
sideration is not confined to words expressive of a wish or rec-

ommendation only, but the property is given to the respondent " in the full confidence " that he will afford to the children of the testatrix adequate support. Although these words would not necessarily create a trust in a case where a different intent is clearly indicated, they are nevertheless strong and significant to show that such was the purpose of the testatrix, when taken in connection with other facts and circumstances which have a like tendency. *Wright* v. *Atkins*, 17 Ves. 255, 258, 261.` *Meredith* v. *Heneage*, 1 Sim. 542, 556.

We think it also worthy of remark in that connection that it is not left to the respondent to determine the amount or extent of the support which he was to afford to the children. The gift to him is not in the confidence that he will give them such support as he may think proper, or as in his judgment they may need, but to such an extent as they shall in fact " stand in need of." It was to be measured, not by the exercise of his discretion in the matter, but by the actual wants of the children.

The view which we have taken of the construction of the clause of the will by which the property of the testatrix is given to the respondent for his life is greatly strengthened when we take into consideration the relations of all the parties toward each other, the nature and condition of the property which was the subject of the gift, and the ultimate disposition which was made of it by the will after the death of the respondent. The objects for whose comfort and support the testatrix was aiming to provide were her own children, three of them by a former husband, and one by the respondent. They had always lived in the family of the testatrix and her husband, and received all needful support as members thereof; they had no property of their own ; and, if they were deprived after her death during the life of the respondent of all benefit of the estate of their mother, from which the support of the family had been chiefly drawn during her life, they would not only lose the support which they had previously enjoyed, but would be in danger of being left without adequate means of support, and without habits or abilities which would enable them to obtain a livelihood. To these children she gives the entire beneficial interest in her whole estate

after the death of her husband. Is it reasonable to suppose that under such circumstances she intended that these children, who were so clearly the chief objects of her bounty, should be left during the lifetime of her husband without any such right or interest in her estate as would enable them to enforce a claim for support in the event that, from alienation of feeling, imbecility of mind, or any other like cause, the respondent should be unwilling or unable to comply with her wish or to exercise a discretion in their behalf ?

It is suggested that in other clauses of the will, in which she creates a trust in favor of her daughters for their respective shares of her estate, of which they are to have the entire income after the death of her husband, she does not use words of entreaty, request and recommendation, but apt and technical words by which to establish a trust in their behalf. But we think this suggestion is not entitled to much weight. She might well express herself in a different language when addressing her husband from that which she would use toward strangers, and at the same time intend a similar result. Words of confidence, entreaty and recommendation were natural and appropriate when used to express the will of a testatrix who intended to direct and control the conduct of her husband in a matter in which the right to give directions and to control belonged to her. In such a case, the words used by Lord Loughborough are applicable : " Where a person recommends to another who is independent of him, there is nothing imperative, but if he recommends that to be done by a person whom he has a right to order to do it, the mode is only civility." *Malim* v. *Keighley, ubi supra.*

After a careful consideration of the case, we are of opinion that the will creates a trust in favor of the complainant, which it is our duty, sitting as a court of equity, to enforce.

*Decree accordingly.*