EDWARD E. ALDRICH *vs.* CHARLES F. ALDRICH, executor,
& others.

Worcester. October 3, 1898. — October 20, 1898.

Present: FIELD, C. J., KNOWLTON, MORTON, BARKER, & HAMMOND, JJ.

*Will — Trust — " Precatory Words."*

A testator gave his entire estate, both real and personal, to his wife absolutely.
  After one or two intervening clauses he provided as follows: " I give all my
  estate to my said wife to the end that she may be able to maintain a home for
  herself, and one where she can receive all our dear children, as we have been
  accustomed to do during our joint lives. I am confident she will manage with
  good discretion and fidelity what is committed to her, and that when she shall
  no longer need the property it will be equally divided among all our children,
  or their representatives." When the will was made and at the death of the
  wife, who survived him, they had five children, A. and B., sons, and C., D., and
  E., daughters. The wife gave by will, after a few small legacies including a
  pecuniary legacy to A. and one to B. of an equal amount in trust, her entire
  estate to C., D., and E. *Held*, on a bill in equity by B. to establish a trust un-
  der the will of his father, that, taking the will as a whole, it was not the intention
  of the testator to create a trust.

BILL IN EQUITY, filed May 6, 1898, in the Superior Court, by
a son of P. Emory Aldrich, to establish a trust under the will of
his father.

The bill alleged that the testator died on March 14, 1895,
leaving a will by which he gave " all the rest and residue of my
estate, after the payment of debts," to his wife. After appoint-
ing her executrix, and requesting that she be exempt from giving
sureties on her bond and be not required to file any schedule
of property in the Probate Court, he proceeded, " I give all my
estate to my said wife to the end that she may be able to main-
tain a home for herself, and one where she can receive all our
dear children, as we have been accustomed to do during our joint
lives. I am confident she will manage with good discretion and
fidelity what is committed to her, and that when she shall no
longer need the property it will be equally divided among all
our children, or their representatives." The widow died on De-
cember 25, 1897, leaving a will by which she provided, " After
the payment of all debts and charges it is my wish so to pro-
vide that the remainder of my property may suffice if possible to

maintain the home where we have so long lived happily, for those of my children who may need it, without attempting to control their disposition of it as may to them seem best." After a few small legacies, including one thousand dollars to Charles F. Aldrich, a son, who was named executor, and one thousand dollars to said Charles in trust for the plaintiff, the testatrix further provided, "All the rest, residue, and remainder of my property of every nature, I give, devise, and bequeath to my three daughters, Caroline V. Durant, Henrietta G. Wardwell, and Josephine C. Aldrich, in equal shares, to have and to hold to them their heirs and assigns forever. It is not necessary further to state the reasons for these provisions. My children all know that there is no difference in our affectionate relations, and I know that if occasion arises each one of them is ready to help the others."

These three daughters, the plaintiff, and Charles F. Aldrich are now and were the only children of P. Emory Aldrich and his wife when he made his will. The widow died possessed of the personal property left her by her husband's will, except the income thereof, which she spent during her life. The plaintiff received during the life of the testatrix no part of the testator's property, either real or personal, and the one thousand dollars left to him in trust by the will of the testatrix was less than one fifth of the property owned by her when she made her will, and at her death exclusive of what came to her by the will of her husband, and less than one fifth of the personal property so left by him, and less than one fifth of the value of the real estate left by him. The prayer was that an account might be taken, and that the executor might be directed to hold the property as trustee, and to pay over to the plaintiff one fifth of the same.

Hearing before *Dewey*, J., who reserved the case for the consideration of this court.

*G. S. Taft*, for the plaintiff.

*C. F. Aldrich & W. B. Durant*, for the defendants.

MORTON, J.    If the testator had intended to create a trust in favor of his children at his wife's death, there can be no doubt that he knew how to do it in clear and unmistakable terms, and it is almost inconceivable that, if such was his purpose, he

should have expressed himself in the manner in which he has done.

There is no doubt that words of recommendation, or of confidence, entreaty, hope, or desire, have been held sufficient under some circumstances to create a trust. But, speaking generally, this was because in such cases such a construction was supposed to carry out the intention of the testator. If an arbitrary rule seems to have been laid down at one time in regard to what would constitute a precatory trust, there can be no doubt, we think, that the tendency of later decisions has been, if not to relax the rule thus laid down, at least not to extend it. *Hess* v. *Singler*, 114 Mass. 56. *Lambe* v. *Eames*, L. R. 10 Eq. 267; *S. C.* 6 Ch. App. 597.

In the present case there is what clearly would constitute in law, if it stood alone, an absolute gift of the estate to the wife. Then follows, after one or two intervening clauses, the one on which the plaintiff relies. This was intended by the testator, it seems to us, to express his reason for the gift to his wife and his confidence in her, and not to cut down or affect the absolute character of the gift which he had previously made to her. It is true that he says in substance that he expects that the property, when she shall no longer need it, will be divided equally between the children and their representatives. But there is nothing which renders it obligatory on her to do this, and therefore one of the features of a precatory trust is wanting. See *Warner* v. *Bates*, 98 Mass. 274; *Spooner* v. *Lovejoy*, 108 Mass. 529; *Hess* v. *Singler*, 114 Mass. 56; *Sears* v. *Cunningham*, 122 Mass. 538; *Barrett* v. *Marsh*, 126 Mass. 213; *Davis* v. *Mailey*, 134 Mass. 588; *Sturgis* v. *Paine*, 146 Mass. 354; *Durant* v. *Smith*, 159 Mass. 229; *Eaton* .v. *Watts*, L. R. 4 Eq. 151; *Lambe* v. *Eames*, L. R. 10 Eq. 267; *In re Hutchinson*, 8 Ch. D. 540; *Mussoorie Bank* v. *Raynor*, 7 App. Cas. 321; *Parnall* v. *Parnall*, 9 Ch. D. 96; *Meredith* v. *Heneage*, 1 Sim. 542; *Sale* v. *Moore*, 1 Sim. 534; *Hoy* v. *Master*, 6 Sim. 568; *Webb* v. *Wools*, 2 Sim. (N. S.) 267; *In re Adams*, 27 Ch. D. 394, 406; *In re Williams*, [1897] 2 Ch. 12; *Pennock's estate*, 20 Penn. St. 268; *Clay* v. *Wood*, 153 N. Y. 134; *Randall* v. *Randall*, 135 Ill. 398; *Nunn* v. *O'Brien*, 83 Md. 198.

The cases which we have cited do not resemble in all respects

the one at bar, and there are English and American cases which seem to support the view for which the plaintiff contends. But the question is, whether, taking the will as a whole, it was the intention of the testator to create a trust, and we are of opinion that it was not, and that the construction which we have adopted is in harmony with the more recent English and American cases.                            *Bill dismissed.*