HARRIOT A. NEWCOMB, executrix, *vs.* TRUSTEES OF PINE GROVE CEMETERY & others.

Bristol.    January 2, 1906. — June 18, 1906.

Present: KNOWLTON, C. J., MORTON, LATHROP, HAMMOND, & SHELDON, JJ.

### *Devise and Legacy.*

A testatrix bequeathed one half of her personal property to her husband during his life and after his decease bequeathed it to her daughter "absolutely, if she shall be living at the time of my husband's decease, subject to certain other bequests hereinafter made." Five paragraphs enumerating the other bequests referred to were preceded by the following direction: "In the event that my said daughter shall not be living at the time of the decease of my said husband, then immediately upon his decease, I direct my executrix hereinafter to be named, to pay the following bequests." One of the five bequests was to the trustees of a certain chapter of a certain order "in case the said chapter shall be in existence at the death of my said husband," and there was a further direction to pay the five bequests from the personal property of her estate remaining at the death of her husband if sufficient, or, if not sufficient, that a sufficient amount of the real estate remaining at the death of her husband should be sold to pay the bequests. *Held*, that the gift to the daughter was an absolute one subject to the five bequests, and that these bequests were payable immediately on the death of the husband and were not deferred until the death of the daughter.

BILL IN EQUITY, filed in the Probate Court for the county of Bristol on February 24, 1905, by the executrix under the will of Betsey T. Hayward for instructions.

The will was as follows :

" I, Betsey T. Hayward, wife of William A. Hayward, of the city of New York, in the State of New York, declare this to be my last will and testament.

" Item 1st. I give and bequeath to my beloved daughter Harriet B. Hayward, all my jewelry, trinkets, wearing apparel, linen, books, pictures, prints, plate, silverware, china, household goods, furniture and fixings.

"Item 2d.   I give and bequeath to my said daughter Harriet B. absolutely, the one half of all the money, stocks, bonds, mortgages, debts, rents and dividends, and all other personal property belonging, due or owing to me at the time of my death.

"Item 3d.   I give and devise to my said daughter Harriet B. to her sole and separate use, the one half of all the real estate of whatever nature or character of which I may die seized or that may be belonging and coming to me from the estate of my father the late Nathaniel Newcomb of the Town of Norton in the State of Massachusetts, or from any and all other sources at the time of my decease, together with all the hereditaments and appurtenances thereto belonging or in any wise appertaining, to have and to hold the premises above described to the said Harriet B. Hayward, her heirs and assigns forever.

"Item 4th.   I give and bequeath to my beloved husband William A. Hayward, during his natural life, the one half of all the personal property belonging, due and owing to me at the time of my decease, excepting the same stated and set forth in the first item of this will.   And after his decease, I give and bequeath the same to my said daughter Harriet B. absolutely, if she shall be living at the time of my husband's decease, subject to certain other bequests hereinafter made.

"Item 5th.   I give and devise to my said husband William A. Hayward the one half of all the real estate of whatever nature and character of which I may die seized, or that may be belonging and coming to me from the estate of my father the said Nathaniel Newcomb and from any and all other sources, at the time of my decease, together with all the hereditaments and appurtenances thereto belonging, or in any wise appertaining, to have and to hold the premises above described, to the said William A. Hayward, during his natural life.   And after his decease I give and devise the same to my said daughter Harriet B. to have and to hold the said premises above described to my daughter Harriet B. Hayward, her heirs and assigns forever.

"Item 6th.   In the event that my said daughter Harriet B. shall not be living at the time of the decease of my said husband, William A. then immediately upon his decease, I direct my executrix hereinafter to be named, to pay the following bequests.

"First.   I give and bequeath to the Selectmen, or other proper officers of the Town of Norton, in the State of Massachusetts, and to their successors forever, in trust, the sum of two thousand dollars, for the benefit of the Burying Ground in the said Town of Norton, known as ' Timothy's Plain' to be applied by my said trustees in keeping the said Burying Grounds in proper condition, that is to say, to keep the same well fenced, with good gates, walks, and to plant trees and flowers and keep the grass in good condition.

"Second.   I give and bequeath to the trustees or other proper officers of the ' Pine Grove Cemetery ' in the town of Milford, in the State of Massachusetts, and to their successors forever in trust, the sum of two thousand dollars for the benefit of the said ' Pine Grove Cemetery,' in keeping the same in proper condition and order, as the proper officers of the said cemetery may deem best.

" Third.   I give and bequeath to the trustees or other proper officers of the said ' Pine Grove Cemetery,' in the said Town of Milford, and to their successors in trust forever, the further sum of one thousand dollars for the benefit of the Family Lot, standing in the name of William A. Hayward, in the said ' Pine Grove Cemetery ' to be used by the said officers in keeping the said Family Lot in good and becoming condition, that is to say, to keep the grass properly cut, and plant annually, and keep in order shrubs and flowers and all other necessary and proper attentions.

" Fourth.   ·I give and· bequeath to my adopted daughter Almira Hayward, now the wife of —— Pierce of Milford in the State of Massachusetts, whose Christian name is to me unknown, the sum of one thousand dollars absolutely, to her sole and separate use.

" Fifth.   I give and bequeath to the trustees of Laurel Chapter No. 44, Order of the Eastern Star, in the City of New York, and to their successors forever, in case the said Chapter shall be in existence at the time of the death of my said husband, the sum of one thousand dollars absolutely.   And I direct my executrix hereinafter to be named, to pay the said bequests set forth in this item from the personal property of my estate that shall remain at the death of my said husband, in case there shall be

sufficient therefor. And in the event that there shall not remain a sufficient amount of my personal estate, then I direct my said executrix to pay the same from the money received from the sale of a sufficient amount of my real estate that shall remain at the time of the death of my husband.

"Item 7th. I hereby appoint my beloved sister Harriot A. Newcomb to be the sole executrix of this will, revoking all former wills by me made.

"In witness whereof, I, Betsey T. Hayward have to this my last will and testament, consisting of one sheet of legal cap paper, subscribed my name and set my seal this second day of June A. D. 1877."

Here followed the signature and seal of the testatrix and an attesting clause with the signatures of three witnesses.

In the Probate Court *Fuller*, J. made a decree that the several bequests in Item 6th were not payable during the life of Harriet B. Minchew, formerly Harriet B. Hayward, and the executrix was directed to hold the sum of $7,000 of the personal estate of the testatrix and to pay the income thereof to Harriet B. Minchew during her life. The trustees of Pine Grove Cemetery, Almira H. Pierce and Laurel Chapter No. 44 Order of the Eastern Star appealed.

The case came on to be heard before *Braley*, J., who reserved it upon the pleadings, which contained a full statement of all the material facts, for determination by the full court.

*A. Fuller & W. J. Davison*, for Harriet B. Minchew, a daughter of the testatrix.

*C. F. Williams*, for certain legatees named in the sixth clause of the will of the testatrix.

MORTON, J. This is a petition by the executrix of the will of Betsey T. Hayward for instructions as to the time when certain legacies given by that will are payable. The clauses under which the question arises are the fourth and the sixth. The fourth is as follows : "Item 4th. I give and bequeath to my husband William A. Hayward, during his natural life, the one half of all the personal property belonging, due and owing to me at the time of my decease, excepting the same stated and set forth in the first item of this will. And after his decease, I give and bequeath the same to my said daughter Harriet B. abso-

lutely, if she shall be living at the time of my husband's decease, subject to certain other bequests hereinafter made." The sixth clause is this: "Item 6th. In the event that my said daughter Harriet B. shall not be living at the time of the decease of my said husband, William A., then immediately upon his decease, I direct my executrix hereinafter to be named, to pay the following bequests," then follow the bequests, five in all. Two of them are for the benefit of cemeteries in Norton and Milford, one is for the purpose of keeping the family lot in the burying ground in Milford in good condition, one is to an adopted daughter, and the last is "to the trustees of Laurel Chapter No. 44, Order of the Eastern Star, in the City of New York." The question is whether the legacies are payable on the death of the husband or on the death of the daughter, the ambiguity arising from the sixth clause. The Probate Court ruled that they were not payable during the life of the daughter and directed the executrix " to hold the sum of $7,000 of the personal estate of the testatrix and pay the income thereof to Harriet B. Minchew during her life." Harriet B. Minchew is the daughter. Certain of the legatees named in the sixth clause appealed.

We think that the ruling was wrong. The will is obscure and we cannot be sure that the view which we take is the correct one. But it is plain that the testatrix knew how to create a life estate. She did it in the case of her husband, and if she had intended that the legacies given in the sixth clause should not be paid until after her daughter's death, if the daughter survived the husband, and that the income should be payable in the meantime to the daughter, it is difficult to understand why she should not have made that intention clear, instead of leaving it to be inferred from the vague provision in the sixth clause that if her daughter did not survive her husband then the bequests that followed should be immediately paid. *Aldrich* v. *Aldrich*, 172 Mass. 101. Again, by the fourth clause the remainder of the half of the personal property given to the husband for life is given to the daughter " absolutely . . . subject to certain other bequests hereinafter made," which are manifestly the bequests contained in the sixth clause. There is no suggestion of a life estate in the daughter also. On the contrary the gift to her is an absolute one and expressly made subject to the legacies

thereinafter given which, in the absence of anything more, would make them payable at the husband's death. Further, in the bequest to the trustees of Laurel Chapter No. 44 the gift is to take effect if the Chapter is in existence at the death of her husband, not at the death of the daughter if she survives the husband, which would seem to indicate that the death of the husband was the *punctum temporis* as of which the legacy was to be paid. And there is a general direction that the bequests set forth in the sixth clause shall be paid from the personal property remaining at the death of the husband if sufficient, which also would seem to point to the death of the husband as the time for the payment of the legacies. Still further, one of the bequests is to the adopted daughter, who it is agreed is younger than Mrs. Minchew, and it is hardly reasonable to suppose that the testatrix intended to postpone its payment till after Mrs. Minchew's death. Lastly, we think that the language of the sixth clause may and should be construed rather as referring to the contingency on which the remainder is given by the fourth clause to the daughter, namely, " if she shall be living at the time of my husband's decease," than as manifesting an intention that the daughter should take a life estate in the remainder if she survived the husband, and that the words " then immediately upon his decease " have the same legal effect as the words " subject to " in the fourth clause.

The result is that the decree of the Probate Court should be reversed and a decree entered declaring that the legacies were payable on the death of the husband.

*So ordered.*