GEORGE H. POOR, executor, *vs.* BENJAMIN F. BRADBURY
& others.

Plymouth.    March 14, 1907. — June 26, 1907.

Present: KNOWLTON, C. J., HAMMOND, LORING, SHELDON, & RUGG, JJ.

*Devise and Legacy.    Trust.*

By a clause in her will a testatrix bequeathed one half of the residue of her estate
to a society for the prevention of cruelty to animals "and the other half to my
friend B. in the confidence that he will use it in the prosecution of his work
against the encroachments of the Roman Catholic Church upon our common
school system. And if said B. shall not be living at the time of distribution
. . . I direct my executors to pay said one half . . . to any organization which
in their judgment . . . may be carrying on the same work as B., but if in their
judgment there is no such organization . . . then " to a society for the prevention
of cruelty to children. The executor brought a bill in equity for instructions,
and at a hearing thereon it appeared that, before the death of the testatrix, B.
had been engaged in conducting public meetings for the purpose of calling
attention to what he and others believed to be a danger to all American social,
political and religious institutions from the Roman Catholic Church, that in so
doing he used funds which he had solicited for the purpose, together with sums
which he himself contributed, and that he kept a careful account, separate from
his personal accounts, of funds so used but rendered an account to no one, that
the testatrix, whose relations with B. were those of confidence, was a contributor
to the work, was on one of the committees in charge of it and was a frequent
attendant at the meetings. *Held,* that there was no trust, but that the gift to
B. was absolute.

BILL IN EQUITY by the executor of the will of Sarah D.
White for instructions, filed in the Supreme Judicial Court for
the county of Plymouth on December 9, 1904.

There was a hearing before *Rugg,* J., who reserved the case
for consideration and determination by this court. The facts
are stated in the opinion.

*O. Storer,* (*E. S. Crockett* with him,) for the defendant
Bradbury.

*C. C. Read,* for the Massachusetts Society for the Prevention
of Cruelty to Children.

*R. B. Sprague,* trustee in bankruptcy of the estate of Benja-
min F. Bradbury.

*J. Everett,* for the defendant Grover and certain next of kin,
submitted a brief.

*G. R. Nutter*, (*J. B. Studley* with him,) for certain defendants.
*S. H. Tyng*, for the executor.

RUGG, J.   This is a bill in equity for instructions as to the meaning of the sixth paragraph of the will of Sarah D. White, which is as follows:

"I give and bequeath the residue of my estate, one half to the Massachusetts Society for the Prevention of Cruelty to Animals, and the other half to my friend Benjamin F. Bradbury of Boston in the confidence that he will use it in the prosecution of his work against the encroachments of the Roman Catholic Church upon our common school system.   And if said Bradbury shall not be living at the time of distribution herein provided, I direct my executors to pay over said one half of the residue of my estate to any organization which in their judgment and discretion may be carrying on the same work as said Bradbury, but if in their judgment there is no such organization which should have it, then they shall pay the same to the Massachusetts Society for the Prevention of Cruelty to Children whereof Francis B. Fay is now president."

The other portions of the will throw no light upon the interpretation to be given to this paragraph.   The case was sent to a master, who reported, respecting the work of Bradbury and the relation of the testatrix to him, that " he initiated in 1888 a series of meetings held in Boston on Sunday afternoons, which were designated 'Patriotic Lectures.'   The purpose of the meetings was to call the attention of the public to what was believed by Bradbury and others to be the danger to all American social, political and religious institutions from the Roman Catholic Church.   He was particularly interested in the alleged danger to the public school system.   The lectures, however, made no special attempt to deal with the question, but were devoted to exposing and attacking the alleged attitude of the Church toward said institutions, including the schools.   He was individually responsible for the expenses and met them by voluntary contributions from the public, making up any deficit himself. He kept a distinct account of every cent, regarding funds contributed to this work as entirely distinct from his personal funds, but he never rendered any account to any one.   No profit was ever made by him from these contributions.   The work was

under no organization. The testatrix constantly attended the meetings, was on one of the committees in charge, and contributed generously to the work. She knew that Bradbury kept a strict account of all moneys contributed to the work distinct from that of his personal funds and that he did not put into his own pocket any funds contributed to the work. She also loaned him money for which he gave her his note, which he afterwards paid."

The cardinal rule, now generally adopted respecting the interpretation of wills, is to give effect to the intent of the testator, if it can be discovered, and not to attach a hard and fast meaning to particular words apart from their connection and the atmosphere of the instrument in which they are used. *McCurdy* v. *McCallum*, 186 Mass. 464. The relations of the testatrix to Bradbury had been those of confidence and deep interest in the educational and public work which he had been carrying on. The expenses necessary for the support of this work had been in part met by public subscription, but Bradbury had never been required to account, nor had he made any accounting of the funds he received to any organization or person, although keeping a strict account of his receipts and disbursements in that connection. In *Warner* v. *Bates*, 98 Mass. 274, a bequest was given by a wife to her husband "in the full confidence that" he would afford protection and support to the children. This was held to create a precatory trust. In *Spooner* v. *Lovejoy*, 108 Mass. 529, the words "She is of course to charge herself with the education and support of our daughters"; in *Dickson* v. *United States*, 125 Mass. 311, the words "Wishing to contribute my mite towards suppressing the rebellion and restoring the Union"; in *Hess* v. *Singler*, 114 Mass. 56, the words "I . . . signify . . . my desire and hope"; in *Sears* v. *Cunningham*, 122 Mass. 538, the words "With only this condition that I wish"; in *Barrett* v. *Marsh*, 126 Mass. 213, the words "It is my desire"; in *Rose* v. *Porter*, 141 Mass. 309, the words "I assume my eldest son will understand and appreciate my reasons for giving . . . to his younger brothers; and that they on their part will not fail to do for him and his family, all that . . . the truest fraternal regard may require them"; in *Durant* v. *Smith*, 159 Mass. 229, the words "It being my request" and "it is also my request"; in *Aldrich*

v. *Aldrich*, 172 Mass. 101, the words " I am confident . . . that
. . . the property . . . will be divided equally "; in *Lloyd* v.
*Lloyd*, 173 Mass. 97, the words " Having full faith and confi-
dence . . . and knowing that . . ."; in *Pitts* v. *Milton*, 192
Mass. 88, the words, " I give . . . to my beloved wife all my
real and personal estate . . . for the purpose of maintaining
herself and our children "; and in *Williams* v. *Williams*, [1897]
2 Ch. 12, the words, " In the fullest confidence that"; —
have all been held not to create a precatory trust. These
decisions, so far as they throw any light upon the words used
by the testatrix, indicate that they should be construed as
an absolute gift, rather than as constituting a trust. The lan-
guage employed by the testatrix is somewhat like that used in
*Warner* v. *Bates*, 98 Mass. 274, where it was held that a trust
was created. The scope of that decision, however, is not to be
enlarged (*Aldrich* v. *Aldrich*, 172 Mass. 101). Further, the
words there under consideration were somewhat more peremp-
tory than those used in this instrument, and the circumstances
of duty owed by the maker of the will to the *cestui que trust*, to
which weight is attached in the opinion, are wholly wanting
here. Without questioning that case, it is distinguishable from
the present.

Giving due weight to the work with which Bradbury was iden-
tified and the interest and relation of the testatrix to it and to
Bradbury, the intent of the testatrix appears to have been to
make an absolute gift to Bradbury. The words " in the confi-
dence that he will use it for the prosecution of his work " speak
the reason for the disposition, and do not establish a trust. In
effect she says: I give the other half of the residuum of my es-
tate to my friend for the reason that I have absolute confidence
that he will use it in the prosecution of his work.

Arguments both for and against the conclusion we have
reached may be founded upon other language of the residuary
clause, but conceding their utmost strength to those in favor of
a trust, they do not balance the considerations which lead to the
determination that a gift was intended.

It becomes unnecessary to consider the other questions raised
at the argument.

*Decree accordingly.*