# GENERAL CLERGY RELIEF FUND *v.* SHARPE.

---

WILLS; EXECUTORS AND ADMINISTRATORS; EVIDENCE; BEQUESTS VOID FOR UNCERTAINTY; RESULTING TRUSTS.

1. The law scrutinizes a bequest to an executor, and before it can be held that the bequest vests property of the estate in the executor beneficially, it must clearly appear that the testator intended that it should so vest.

2. Neither a letter naming a residuary legatee, signed by a testatrix, addressed to her executors, and found inclosed with her will upon the opening of the will, nor a conversation between the testatrix and one of the executors, relating to the circumstances under which the letter was written, can be used or considered in construing the will.

3. Under a bequest of the residue of the estate of a testatrix "unto my said executors, or unto the survivor of them, to distribute such residue of

my estate among such persons as my said executors, or the survivor of them, shall deem proper," the executors take no beneficial interest, but hold the residue of the estate in trust for the next of kin of the testatrix.

No. 2692.   Submitted November 5, 1914.   Decided February 1, 1915.

HEARING on an appeal from a decree of the Supreme Court of the District of Columbia, holding an equity court, construing a will.                                    *Affirmed.*

The COURT in the opinion stated the facts as follows:

A bill in equity was filed in the supreme court of the District of Columbia, seeking an interpretation of certain provisions of the will of Lucy Page Whitehead, who died in December, 1912, leaving a last will and testament dated August 4, 1910, with codicil attached, dated April 8, 1912.   The paragraph of the will involved in this appeal reads as follows:

Twenty-sixth: All the rest, residue, and remainder of my estate, including the residue of what may arise hereunder from the conversion by sale of realty into personalty, I give and bequeath unto my said executors, or unto the survivor of them, and I request my said executors, or the survivor of them, to distribute such residue of my estate among such persons as my said executors, or the survivor of them, shall deem proper.

In the codicil, Henry G. Sharpe, Charles H. Page, and Willoughby L. Webb were named as executors.   Page renounced, and letters were issued to Sharpe and Webb.   When the will was opened, there was found inclosed with it an undated letter signed by the testatrix and addressed to her executors.   The letter contained a long list of personal property, and the names of the persons to whom she wished it to be given.   Omitting this portion of the letter, the material paragraph reads as follows:

I give and bequeath to the "General Clergy Relief Fund" a

Corporation created in the year 1855, by chapter 459 of the Laws of the State of New York, or the treasurer thereof for the time being, for its corporate purposes, my residuary estate.
(Signed) Lucy Page Whitehead.

Webb, one of the executors, testified as to the circumstances which called for the writing of the letter. In brief, he stated that he had drawn two or three wills for the testatrix, and discussed with her the advisability of making changes in her will from time to time with reference to certain of her property; that he knew for a number of years before her death that testatrix had written a letter to her residuary legatees; that she had informed him that he was to be a residuary legatee or executor, or both; "that (quoting from the opinion of the court below) he advised her to leave in her will all matters of importance, and then give to her residuary legatees or such other persons as she might select, articles of property which she might care to change from time to time, and then write a letter to such legatee or legatees, requesting them so to dispose of such articles or to dispose of them in the way stated in the letter;" that he was careful to advise her that the letter would have no legal or equitable effect; that she could change the letter from time to time, and sign it without witnesses, as it was no part of the will; that testatrix had told him that she had mentioned in her will the Clergy Relief Fund for a sum of money; that he told her if any question arose as to the ownership of the property involved in the will he should feel at liberty to use his own discretion, and that it was his opinion that the executors could keep or destroy the property, or refuse to dispose of it as she requested, but "I told her that in the case of writing such letter, her only assurance that her wishes as stated therein would be carried out would be that her residuary legatees, to whom the letter was addressed, would conscientiously consider it to be a proper thing to accede to her request."

The court below entered a decree holding that the provision of the will in question created a trust void for uncertainty, and that the executors now hold the residue named therein "in trust

for the next of kin of said Lucy Page Whitehead." From the decree the defendant corporation, General Clergy Relief Fund, prosecuted this appeal.

*Mr. Francis A. Lewis, 3d, Mr. Roland S. Morris, Mr. A. Mitchell Palmer* and *Messrs. Hamilton, Yerkes, & Hamilton,* for the appellants:

Under the facts the General Clergy Relief Fund is entitled to the residue of the estate after payment of the specific legacies devised in the will and letter, for the reason that it is a long-established and well-recognized rule of equity that if an estate is devised which is in law absolute, but which is for purposes not expressed in the will, though known to the devisee prior to the death of the testator, a court of equity will fasten a trust on such devisee on the ground of fraud, and compel him to carry out the desires of the testator. *Thynn* v. *Thynn,* 1 Vern. 295; *Reech* v. *Kennegal,* 1 Ves. Sr. 122; *Barrow* v. *Greenough,* 3 Ves. Jr. 151; *Russell* v. *Jackson,* 10 Hare. 204; *Hoge* v. *Hoge,* 1 Watts, 163; *Schultz's Appeal,* 80 Pa. 396; *Flood* v. *Ryan,* 220 Pa. 450; *Stirk's Estate,* 232 Pa. 98; *Shields* v. *McAuley,* 37 Fed. 302; *Williams* v. *Fitch,* 18 N. Y. 546; *Wallgrave* v. *Tebbs,* 2 K. & J. Ch. Rep. 313; *Tee* v. *Ferris,* 2 K. & J. Ch. Rep. 357; *Edson* v. *Barto,* 10 App. Div. 104; *Knox* v. *Knox,* 59 Wis. 172; *Green* v. *Marsden,* 1 Drewry, 646; *Pratt* v. *Sheppard,* 88 Md. 610; *Colton* v. *Colton,* 127 U. S. 300; *Burns* v. *Burns,* 137 Fed. 781; *Williams* v. *The Committee,* 92 Md. 497; *O'Hara* v. *Dudley,* 95 N. Y. 403; Jarman, Wills, 5th Am. ed. 396; 2 Story, Eq. Jr., 13th ed. 516.

*Mr. A. S. Worthington, Mr. Wm. K. Quinter,* and *Mr. Morgan H. Beach* for the appellees.

Mr. Justice VAN ORSDEL delivered the opinion of the Court:

It is conceded that Webb, one of the executors, was fully advised by the testatrix of the contents of the letter found with the will, and that he, impliedly at least, promised to carry out

her request. It is conceded, also, as indeed it must be, that the letter, not being executed or attested as required by the statute, and not referred to in the will, nor even shown to have been in existence at the date of the execution of the will, has no testamentary effect, and cannot, therefore, be used to modify or explain any of the provisions of the will.

It is undoubtedly the law that, had the bequest been made unqualifiedly to the executors, and the devise had passed to them, this unattested letter, in the circumstances of this case, could be uesd, not to change or modify the terms of the will, but to impose a constructive trust upon the devisees to apply the residue bequeathed to them to the object defined in the letter. *O'Hara* v. *Dudley,* 95 N. Y. 403, 47 Am. Rep. 53. It is true, in fact conceded by counsel, that the object of the "request" is indefinite and uncertain, and that no express trust was created. But the appellant insists that the word "request" is here applied to an indefinite and discretionary object, and thus no legal or equitable obligation is imposed upon the legatees, and therefore they take an absolute estate free of all trusts and conditions. After summarizing the authorities, they attempt in this case to tie us to the rule that a gift accompanied with a request, but with no express words of trust, to use it for an indefinite object, creates an absolute estate in the legatee to whom it is bequeathed. This rule, though correct in some instances, is subject to exception. It has many qualifications, depending upon the circumstances deducible in each case from the language of the will itself and the reasonable inferences to be drawn therefrom. There is no conflict in the authorities, however, when the distinctions are reduced to the final analysis. Precatory words of desire, request, recommendation, suggestion, or confidence, addressed to a legatee, will create a trust where the object and amount are certain and the beneficiary is clearly designated. But where such words are used, and the object is indefinite and uncertain, with no directions as to the amount to be given or the object to be selected, and the application of the fund is left entirely to the discretion of the legatee, a trust will not be deemed to have been intended. Before a precatory trust can be found, not only must the object

be certain and definite and the property to which it is to attach clearly designated, but the recommendatory clause must be peremptory on the donee.

In the case of *Warner* v. *Bates,* 98 Mass. 274, 277, Chief Justice Bigelow announced the rule as to precatory trusts as follows: "If the objects of the supposed trust are certain and definite; if the property to which it is to attach is clearly pointed out; if the relations and situation of the testator and the supposed *cestuis que trust* are such as to indicate a strong interest and motive on the part of the testator in making them partakers of his bounty; and above all, if the recommendatory or precatory clause is so expressed as to warrant the inference that it was designed to be peremptory on the donee; the just and reasonable interpretation is that a trust is created, which is obligatory and can be enforced in equity against the trustee by those in whose behalf the beneficial use of the gift was intended." This rule is approved in *Colton* v. *Colton,* 127 U. S. 300, 32 L. ed. 138, 8 Sup. Ct. Rep. 1164; *Briggs* v. *Penny,* 3 MacN. & G. 546, 21 L. J. Ch. N. S. 265, 16 Jur. 93; *Green* v. *Marsden,* 1 Drew. 646, 1 Eq. Rep. 437, 22 L. J. Ch. N. S. 1092, 1 Week.. Rep. 511; *Lambe* v. *Eames,* L. R. 6 Ch. 597, 40 L. J. Ch. N. S. 447, 25 L. T. N. S. 175, 19 Week. Rep. 659, 25 Eng. Rul. Cas. 471; *Re Hutchinson,* L. R. 8 Ch. Div. 540, 39 L. T. N. S. 86, 26 Week. Rep. 904; *Burnes* v. *Burnes,* 70 C. C. A. 357, 137 Fed. 781; *Hess* v. *Singler,* 114 Mass. 56; *Knox* v. *Knox,* 59 Wis. 172, 48 Am. Rep. 487, 18 N. W. 155. In the present case, because of the lack of a definite object, the clause cannot be interpreted as being peremptory upon the executors. All that they were required to do was to distribute the property to such persons as they might deem proper. While the amount was certain, the object was indefinite and uncertain; hence no express trust was created.

Trusts are divided into two classes, express and implied. "Express trusts may be created either by direct fiduciary expressions, or by precatory words, or by words indicating that a power is to be used in trust." Bispham, Eq. 8th ed. sec. 20. Their creation depends solely upon the intention of the parties. But

"implied trusts are those which, without being expressed, are deducible from the nature of the transaction as matters of intent, or which are superinduced upon the transaction by operation of law, as matters of equity, independently of the particular intention of the parties. The term is used in this general sense, including constructive and resulting trusts." 2 Bouvier's Law Dict. p. 1144. When one conveys property, either by deed or will, and the circumstances are such that the person taking the legal title is not, in equity, entitled to the beneficial interest, equity will imply a trust in favor of the grantor or those standing in his stead. "A resulting trust by presumption of law arises where the legal ownership of property has been disposed of, but it is apparent from the language of the disposition itself, or from the attendant circumstances, that the equitable ownership or beneficial interest was intended to go in a different channel, although there is no declaration, or no sufficient declaration, as to what the channel should be. In this case a trust is implied for the real owner, termed a resulting trust, or trust by operation of law." Adams, Eq. p. 31. In other words, while the legal title passes, the equitable estate remains in the grantor.

Applying these distinctions to the will here under consideration, it is apparent that no express trust was created, either in favor of the next of kin or of any other persons, since those among whom the property was to be distributed are uncertain. But, on the other hand, if it is also apparent that the intention of the testatrix was not to bequeath to the executors the beneficial interest in the property, it would be inequitable to vest in them more than the mere naked legal title. When this condition arises, equity creates a resulting trust.

Having found that no precatory trust was created, and for failure no trust as intended, we are confronted with the contention that the executors took an absolute bequest. Where a testator makes a bequest, coupled with precatory words which fail to create a trust, it does not follow, as matter of law, that such bequest becomes absolute. Before it can be so held, it must clearly appear from the will itself that such was the intention of the testator. The learned justice below was impelled, from the

language of the will, to conclude that no intention existed in the mind of testatrix to give any beneficial estate to the executors. with this conclusion we agree. The gift to the executors was not in trust for a specific purpose, nor in trust for an indefinite purpose. No trust was created, except such a resulting trust as equity, from the infirmities of the will, may interpose.

We are not avoiding nor overlooking the chief rule which governs the construction of wills. "The intention of the testator has always been regarded as the pole star by which any construction of the testamentary instrument is to be guided. To ascertain that intention is the aim of all well-directed attempts at interpretation. Whenever, therefore, it appears from the language of the will that it was the intention of the testator to create a trust, the courts will give effect to that intention, in whatever words it may be expressed." Bispham, Eq. 8th ed. p. 124.

We do not consider this an unconditional bequest. Finding, as we must, the intention of the testatrix within the four corners of the will, we are forced to the conclusion that it was not her intention to make the executors the beneficiaries of the residue of her estate. The language of the will, "I give and bequeath unto my executors, or unto the survivor of them, and I request" them to distribute it in the indefinite manner expressed, concludes any reasonable inference of an absolute bequest to them of the residue of the estate. In the opening paragraph, testatrix appoints her brother and nephew by marriage as executors, with the provision that, if either decline to serve, General Sharpe shall act with the survivor. She then declares that, "wherever the term 'executors' shall be hereinafter employed, it is my intent and meaning to embrace within the said term Brigadier General Henry G. Sharpe, in case he become one of my executors." Numerous times throughout the will she uses the expression, "my executors, or the survivor of them." Can it be conceived that she had in mind making an absolute bequest of the large residue of her estate to General Sharpe, or some unknown indefinite survivor? That such was not her intention further appears in the closing paragraph of the will, where she

directs that her executors who shall qualify "shall receive the sum of twenty-five hundred dollars ($2,500) each in full satisfaction for all services as such executors."

: After bequeathing the residue of her estate to her executors, she requests them to distribute such residue among such persons as they shall deem proper. Distribution is made imperative. No discretion remains in the legatees to apply any of the residue to their individual uses, nor is it to be assumed that such application was intended by the testatrix. In fact, she nowhere refers to them as individuals, but as executors in their official capacity. The law scrutinizes a bequest to an executor. Before it can be held that a bequest vests property of the estate in the executor, it must clearly appear that the testator intended that it should so vest. In the case of *Forster* v. *Winfield,* 142 N. Y. 327, 37 N. E. 111, the will, after authorizing the executors to sell the real estate of the testator to pay debts, provided: "And the net residue, after payment of all such debts, I give to my said executors and to the survivor of them as joint tenants. I have entire confidence that they will make such disposition of such residue as, under the circumstances, were I alive and to be consulted, they know would meet my approval." The court, considering this provision of the will, said: "Before a gift to executors *eo nomine* can be held to vest in them individually, the intention that it should so vest must be plainly manifested. In the language here used we find no such intention. He appoints the plaintiffs executors of his will, and gives them a power of sale. Then he directs them out of the proceeds realized by them from the execution of the power of sale, which they are to receive as trustees and in trust, to pay any debts that he might owe, including mortgages, and then he gives the entire residue, after payment of such debts, to his executors and to the survivor of them as joint tenants. If there were no more in this clause of the will it would scarcely be claimed that the testator had manifested any intention to vest the executors individually with the title to the land or its proceeds. All the language used relates to them as executors, and to them only in their official capacity. The gift is to them as joint tenants, and to the survivor of

them, thus showing clearly that he was dealing with them in their official capacity."

In *Davison* v. *Wyman,* 214 Mass. 192, 100 N. E. 1105, the testatrix made the following bequest to her executors: "Any surplus of my estate remaining after the payment of said fifteen hundred dollars to said  *  *  *  hospital shall be disposed of by my executors (and trustees) at their absolute discretion and according to their own judgment." It was held that no intention was manifested in the will by the testatrix to give the surplus of the estate to the executors for their own benefit; but that it was her intention that they should distribute it to others, and that object being indefinite and uncertain, a resulting trust arose for the benefit of the next of kin of the testatrix. The court said: "But perhaps the decisive consideration is that, as already has been said, the whole fund of which this remaining surplus is only a part was given to Rust and Wadsworth strictly in trust for certain carefully limited purposes, and that the last one of these purposes, in the event which has happened, was not that they should take any surplus for their own use or pay it over to themselves, but that they should dispose thereof, not according to specific directions of the testatrix, but according to their own judgment and discretion; that is, they were not to keep it for themselves, but were to dispose of it to others. We cannot avoid the conclusion that she did not intend them to take this sum for their own benefit, but to dispose of it, though in a manner left to their own unfettered discretion. Under such circumstances it is settled by our decisions that the trust upon which this sum was held was too indefinite to be carried out, and that a resulting trust arose for the benefit of the next of kin of the testatrix."

In each of the cases cited by counsel for appellant, the action was by a supposed *cestui que trust* to recover from a legatee under a will all or a portion of the estate bequeathed to him, the right of action being founded upon an understanding between the testator and the legatee, *dehors* the will, that, in the event of the bequest being made to the legatee, without condition in the will, the legatee would carry out the wish of the testator,

and turn over to the *cestui que trust* the portion of the estate intended for him. There the question of the right of the supposed *cestui que trust,* in an independent action, to have a constructive trust for his benefit imposed upon the bequest to the legatee, was not, and could not be, involved in the construction of the will. In each case, before the action to impose the trust could be maintained, the bequest to the legatee was found to be absolute, as matter of fact, from the terms of the will itself. But that is not this case. As before stated, it is conceded that the letter or the evidence pertaining to the conversation between Webb and the testatrix cannot be used in construing this will. Barring these we have no difficulty, when confined solely to the will, in finding that it was not the intent of the testatrix to make these executors her beneficiaries to the extent of the residue involved. Equity having created a resulting trust, the executors took merely a legal title, and therefore there is nothing upon which a constructive trust could operate.

The equitable interest in the residue of the estate not having passed by the will to the executors as beneficiaries, or to them as trustees under an express trust, to this extent testatrix died intestate. To this property, therefore, the next of kin are entitled, not as beneficiaries under the will, but as the persons entitled under the statute of distributions.

The decree is affirmed, with costs.        *Affirmed.*